MORRISON *vs.* THE NEW YORK AND NEW HAVEN RAIL ROAD COMPANY.

A judgment is to be deemed entered by the direction of a single judge when it is entered by the clerk, at the circuit, upon the verdict of a jury, under section 264 of the code, and from such a judgment section 348 authorizes an appeal upon the law to the general term, without any motion having been previously made, at a special term, for a new trial.

Such an appeal brings up the *law* of the case, as presented by exceptions taken on the trial.

To present a question of *fact* upon the evidence, or the right of the unsuccessful party to a new trial, for the reason that the verdict is against evidence, or upon the ground of surprise, or newly discovered evidence, or the like, a motion must be made at a special term, and from the order made thereon, an appeal to the general term lies.

In an action against a rail road company for negligence in running over and killing a horse, where the injury is alleged to have occurred in consequence of a defect in a fence which the defendant was bound to maintain, if there is *any* evidence that the fence was insufficient and defective, and that the defendant's agents knew or had notice of it, and that the horse got upon the track by means of such defect, it is erroneous to nonsuit the plaintiff.

If, in such a case, there is any evidence that the horse got upon the rail road track over or through a fence which the defendant was bound to maintain, it should be submitted to the jury; but not so of evidence that possibly the horse so got upon the track.

If there is no evidence that the horse got upon the track in the manner alleged, the plaintiff should be nonsuited.

APPEAL by the defendant from a judgment given at the circuit, on a trial before Justice BALCOM and a jury. The action was case for negligence, for carelessly and negligently running over and killing a mare of the plaintiff. So much

of the case as is necessary to an understanding of the questions considered is stated in the opinion.

*W. Tracy,* for the appellant.

*G. Dean,* for the respondent.

*By the Court,* ALLEN, J. The defendant appeals directly from the judgment rendered at the circuit, upon a bill of exceptions annexed to and making a part of the record. It is claimed and objected that a trial by jury can only be reviewed upon a motion for a new trial made in the first instance at a special term, except when ordered to be heard in the first instance at the general term, under the provisions of section 265 of the code of procedure. It was said that a motion for a new trial upon the merits and upon the ground of newly found evidence had been made at special term and granted upon the latter ground and denied upon the other; and that the order granting the new trial, upon appeal by the plaintiff, had been reversed at the general term, leaving the order denying the motion for a new trial upon the merits in force, and the proper subject of consideration upon this appeal. It is a sufficient answer to this suggestion that the record before us does not disclose these proceedings. Upon the case it is an appeal directly from the judgment at the circuit, without any intervening proceedings, and if not authorized by statute must be dismissed. The understanding of the profession has been that an appeal might be taken as has been done in this case, upon which exceptions taken at the trial could be brought before the court at general term, and the practice has been in accordance with this understanding; and in very few cases has a motion been made for a new trial before judgment. Indeed those cases in which the entry of judgment has been stayed to allow a review of the trial have constituted the exceptions to the ordinary practice, and that form of procedure has been resorted to when it has been sup-

posed there were reasons for making the case an exception, and excusing the unsuccessful party from the costs and trouble of an appeal in the first instance. Section 264 of the code prescribes the procedure upon the coming in of a verdict in a trial by jury, and unless a different direction be given by the court it is made the duty of the clerk to enter a judgment in conformity with the verdict. The only direction of the court at variance with the general directions of the statute, contemplated by this section, is an order reserving the cause for argument or fuller consideration. The same section provides for a motion before the same judge who tries the cause, and to be made at the same term or circuit at which the trial is had, for a new trial on the minutes of the judge. Then follows section 265, making provision for cases "reserved for argument or further consideration" under section 264, other than those in which a motion for a new trial upon the minutes, is entertained by the judge, and it directs all such cases to be heard in the first instance at the circuit or special term, except when exceptions are ordered by the judge to be heard in the first instance in the general term. The same section makes provision for a verdict subject to the opinion of the court at the general term. These sections, so far as they provide for the review of the trial by a motion for a new trial upon a case, exceptions or otherwise, relate to proceedings before judgment and when the entry of the judgment has been stayed by direction of the court, and it is supposed by many good practitioners that the entry of judgment is a complete bar to a motion under these sections. It is not necessary to pass upon this question here. If the sections referred to above provide for and regulate the review of trials at circuit by jury, the objection of the plaintiff is well taken and the appeal must be dismissed. But by section 348, an appeal upon the law may be taken to the general term from a judgment entered upon the report of referees, or the direction of a single judge of the same court, in all cases, and upon the fact when the trial is

by the court or referees. A judgment is entered by the direction of a single judge when it is entered under section 264, and an appeal brings up the law of the case as presented by exceptions taken in the progress of the trial. To present a question of fact upon the evidence, or the right of the unsuccessful party to a new trial for the reason that the verdict is against evidence, or upon the ground of surprise or newly discovered evidence, or the like, a motion must be made at special term, and from the order made upon such motion an appeal may be taken to the general term. (*Code,* § 349.) If this is not the true construction of the statute, then subdivision 2 of § 349, authorizing an appeal from an order granting or refusing a new trial, which was inserted by an amendment in 1851, was unnecessary, as it was provided for in section 348, giving an appeal from the law of the case when the trial was by jury. The theory of the code was to review the judgments given at special term and circuits only upon a final appeal to the general term; and while some innovations have been made upon this theory by permitting a motion to be made for a new trial whenever the judge before whom the trial is had thinks it a proper case, and stays the entry of the judgment to enable the motion to be made, the other remedy, by appeal at once to the general term from the judgment at circuit, remains.

This is consistent with *Watson* v. *Scriven,* (7 *How.* 9,) and *Taylor* v. *Harlow,* (11 *id.* 285.) The justices pronouncing the opinions in these cases carefully distinguish between motions for new trials before judgment and appeals upon the law after judgment. (*See per Harris, J.* 7 *How.* 11.)

The only questions before us are upon the exceptions to the rulings of the judge on the trial. The question upon the sufficiency of the evidence to sustain the verdict is not brought up by the appeal.

The most material exception is to the refusal of the judge to nonsuit the plaintiff at the close of the evidence on his part. The negligence complained of as the cause of the in-

jury was the neglect of the defendant to build a sufficient fence along the line of the road opposite the pasture in which the mare was kept. The owner of the lot, a farmer, was the bailee of the mare, having received her from the plaintiff to keep for a special purpose, and he was the witness relied upon to prove the defect in the fences, and that by means of such defect the mare escaped from the lot upon the road of the defendant, where she received the injury complained of. The witness was evidently very far from being a reliable witness, and if he was in the main truthful, he was not candid or ingenuous. But it was for the jury to pass upon his credit and the weight to be given to his testimony, and if that was sufficient, if believed, to authorize the jury to find negligence on the part of the defendant, the judge properly denied the motion for a nonsuit and submitted the question to the jury. The duty of the defendants to erect and maintain fences on the sides of their road, of the height and strength of a division fence required by law, with openings, or gates or bars therein, and farm crossings of the road for the use of the proprietors of the land adjoining the rail road, is not controverted. (Laws of 1850, p. 233, § 44.) The cattle guards mentioned in the same section are required only at road crossings; that is, at the crossings of a public highway and not at farm crossings. (Brooks v. New York and Erie Rail Road Co., 13 Barb. 594.) If there was any evidence that the fence was insufficient and defective, and the defendant's agents knew or had notice of it, and that the mare got onto the road by means of such defect, the exception was not well taken. The description of the fence by the witness is not satisfactory. In his direct examination he mingled a description of another fence with a description of the fence separating the pasture lot from the road, in a way well calculated to mislead, if it was not so intended; and it is not easy to say how much of his evidence relating to the condition of the fence is applicable to the fence in question. The defect in the fence, if there was any, was in its original

Morrison *v.* New York and New Haven Rail Road Co.

construction, and not by reason of its decay or getting out of repair. It was claimed that it was not of a proper height to turn cattle and horses. But the witness, the owner of the farm and the bailee of the mare, by whom she was put into the pasture and kept there, built the fence under a contract with the defendants. The witness testified as follows: "I built the fence. I told the agent of the company that I did not build it for a sufficient fence. I told him that cattle would get over it. The agent of the rail road company employed me to build the fence, and paid me for it. The company first agreed with me to build the fence and then it agreed with me to build it and paid me for it;" and again, "When I built the stone wall I was limited to one dollar a rod. I said it was not enough. The agent of the company told me to build such a fence as I would be satisfied would keep the cattle off the road." The witness, acting under these instructions, represented to the company when he claimed such pay for building the fence, that it was sufficient for the purpose named, to wit, "to keep the cattle off the road." As against third persons and the public the company would not be excused from answering for any defects or insufficiency of the fence; but as against the builder of the fence his admission, if it did not estop him, would be very high if not conclusive evidence to disprove negligence on the part of the defendant; and the plaintiff is in no better situation to allege negligence against the defendant than his bailee would have been. The same witness would have it understood that cattle and horses had before got over the fence, and that the defendant's agents had notice of it. But the cross-examination gave the evidence an entirely different coloring. Upon the direct examination he said that "horses had got out onto the railroad before, and a cow, and he had told the agent of the defendant of it at different times." On his cross-examination he says, "I never knew or had reason to suppose an animal ever got over the fence along the lot where the mare was." And upon the subject of notice he

says that he once, on the cars, told the defendant's superintendent that he wanted a better fence, and that he thought the fence insufficient, and he thought it was before the accident, but was not certain.   This, with some measurements showing the fence to have been three feet high in some places, and in some places more than that, is the only evidence of insufficiency.   There is an entire absence of evidence that any horse or beast had ever got over or broken through it, although it had been built about twelve years, and the defendants had caused it to be built by the party now complaining of it, in performance of a contract made with him to fence his land against the rail road as well as in performance of a duty imposed by law.   It is not to be credited that the fence was, when built, an imperfect and insufficient fence for the purpose required, or that the witness would have relinquished the defendants from their contract except upon a full performance, or an equivalent.   Upon the evidence there was no proof that the fence was defective or insufficient.

A still more palpable defect in the plaintiff's case was in the want of evidence that the mare escaped onto the road through or over the fence.   There was a farm crossing at, and a pair of bars leading into, the pasture lot, with a corresponding pair of bars opposite leading into the lot on which the farm house stood.   No marks or breaks were found upon the fence or ground indicating that the mare with another horse that escaped from the pasture at the same time had so escaped by getting over the fence.   They were found some distance from the bars, and by their tracks could be traced back to within about a rod of the bars.   And there their tracks were not discoverable in the green sward.   In other words, they were traced to within a few feet of the bars, and to a point where if they had passed from the pasture lot through the bars they could not have been traced by reason of the character and condition of the turf or sward.   The bars were slight, but not broken.   The witness before referred to and by whom alone the plaintiff's case is sought to be main-

tained, says: "I know that the bars to the lot in which the mare was were put up after I crossed the railroad last, and I found them up early in the morning when I first looked." On his cross-examination he testified as follows: "My man, Henry and I, had used the bars the afternoon previous; after we passed through we put them up; afterwards I sent Henry to turn the oxen into the lot through both pairs of bars, but was not with him." Henry was not produced as a witness, and it was said by the witness that he did not know where he was. Upon this evidence the presumption was that the horses had escaped through the bars left open by the hired man when he turned out the oxen; and this presumption is strengthened by the absence of the hired man and the omission to prove the condition of the bars when they were first seen in the morning. At most it was a balanced case, and left it for the jury to guess, or to decide arbitrarily without evidence, whether the horses escaped through the neglect of the defendant to build and maintain a proper fence, or the carelessness of the servant of the bailee in omitting to put up the bars. In the latter case the defendant would not have been liable for the injury to the mare. (*Per Selden, J. in Poler* v. *New York. Central Rail Road Co.* 16 *N. Y. Rep.* 476. *Brooks* v. *New York and Erie Rail Road Co.* 13 *Barb.* 594.) The extent of the evidence was that it was possible the injury might have been the result of a defect in the fence which the defendant was bound to maintain. The plaintiff held the affirmative, and when he rested there was no evidence that the mare got onto the road over the fence or through it, and for that reason the nonsuit should have been ordered. It is undoubtedly true that when there is any evidence of neglect the question must be submitted to the jury. So if there was any evidence that the mare escaped over the fence, it should have been submitted to the jury, but not so of evidence that possibly she might have so escaped. (*See Brooks* v. *New York and Erie Rail Road Co. supra, approved in Corwin* v. *New York and Erie Rail*

*Road Co.* 3 *Kern.* 50.) These defects in the case may be ·supplied upon a new trial, but I think the case should not have been submitted to the jury upon this evidence.

The judgment must be reversed and a new trial granted, costs to abide the event.

[NEW YORK GENERAL TERM, September 17, 1860. *Sutherland, Bonney* and *Allen,* Justices.].