Macomber, J.
This action was brought to recover the value of a cow which was killed on the defendant’s railroad by an engine on the 6th day of September, 1888, in the town of Mendon, Monroe county. The plaintiff’s premises abutted against the railroad property and were separated therefrom by a fence which had been constructed by the defendant some years previously. There is nothing in the case to show that the fence, as originally made, was not suitable and proper for the purpose of preventing peaceable cattle from entering upon the railroad tracks from the plaintiff’s lands. The plaintiff’s farm was divided by the defendant’s railroad ; his house and buildings being south of the track and his two pasture lots north of it. These pasture lots bordered on the railroad and each had its own farm crossing affording access to the south part of the farm. The cow in question on the day it was killed was pasturing in the west of the two pasture lots. This cow, with others, was driven across the track to that field in the morning, and in the afternoon was discovered to be dead on the side of the track, under circumstances which showed that she had been struck by the defendant’s locomotive. There is no evidence in the case to show that the cow might have got upon the tracks on this occasion through any carelessness on the part of the plaintiff or his employes in leaving the gate open. It is true that some evidence was given to the effect that at one time the gate was said to have been shut, and the pin fastening the gate was in the post, and at another time later the pin was upon the ground ; but the gate at that time also was closed. There is nothing in the evidence to show that the gate was in fact left open so as to permit this cow to pass through.
That it was possible for an animal to get through the gate and the gate to close after her of its own motion is disproved by the circumstances that the gate sagged heavily at the further end, and in order to be opened had to be lifted from the ground and *73 carried for some little space. The assertion, therefore, made in behalf of the defendant, that the cow went through the gate on this occasion, may be dismissed as being wholly unsupported by any evidence in the case.
One of the main contentions of the counsel for the defendant is that the plaintiff failed to show that the fence in question was insufficient. This branch of his argument brings up for consideration that portion of the general railway act, Laws of 1850, chap. 140, § 44, which provides that “ every corporation formed under this act shall erect and maintain fences on the sides of their road of the height and strength of a division fence required by law, with openings or gates or bars therein, and farm crossings of the road, for the use of the proprietors of lands adjoining such railroad. * * * Until such fences and cattle-guards shall be duly made, the corporation and its agents shall be liable for all damages which shall be done by their agents or engines to cattle, horses or other animals thereon, and after such fences and guards shall be duly made and maintained, the corporation shall not be liable for any such damages, unless negligently or willfully done.”
The Laws of 1854, chap. 282, § 8, also provide that “ every railroad corporation shall erect, and thereafter maintain, fences on the sides of their roads of the height and strength of a division fence as required by law. * * * And so long as such fences and cattle-guards shall not be made, and when not in good repair, such railway corporation and its agents shall be liable for damages which shall be done by the agents or engines of any such corporation to any cattle, horses, sheep or hogs thereon; and when such fences and guards shall have been duly made, and shall be kept in good repair, such railroad corporation shall not be liable for any such damages, unless negligently or willfully done.”
The electors of each town have, under the Eevised Statutes, the power at their annual town meeting to make rules and regulations for ascertaining xhe sufficiency of all fences in such town. E. S., part 1, chap. 11, tit. 2, art. 1, § 5, subd. 11.
When the sufficiency of a fence shall come in question in any suit, it shall be presumed to have been sufficient until the contrary be established. Same chap., tit. 4, art. 4, § 45.
There is no evidence in this case that the town had established the height or strength of the division fences, or any fences. In the absence of such action by the authorities, it was competent to show what in that town the height and strength of such fences generally were. There was, however, no proof of this fact; but it is shown that the railroad company of its own notion, recognizing its own duty and liability, had constructed this fence in a proper way, and of a suitable height and strength to turn orderly and peaceable cattle and other animals from breaking into the railway enclosure. The fence so erected by the defendant was four feet and upwards in height, and had been so maintained by it until, through decay or otherwise, a portion thereof had been broken down, and so remained, to the full knowledge of the defendant’s agents, for a considerable period of time.
*74 Under these circumstances, the fact that there was no standard of height or strength of fences prescribed by the town authorities, as well as the general style of division fences throughout the town, is quite unimportant The defendant must be deemed to have determined conclusively as against itself in relation to abutting owners that the height and strength of the fences so erected by it were necessary and proper for the protection of the adjacent owners of land having cattle and other animals pasturing thereon. The defendant cannot now be permitted to say that it erected a fence higher and stronger than was necessary for that purpose. The statute not only requires the erection of the fence originally in a manner to be sufficient to turn cattle and other animals, but that the same must be maintained in that condition. Hence, if the railway company permits a portion of its fence to be broken down to a height little more than one-half of the height which it deemed originally to be necessary, and cattle escape through the same upon the railway lands, the company is liable for damages done by its engine.
The learned county judge was of the opinion that there was no evidence which warranted the jury to find a verdict in favor of the plaintiff. He thought that the jury had not the right to say that a fence originally four feet and upwards in height, which had been suffered to remain broken down to a height of two feet .and eight inches in places, to the knowledge of the defendant’s agents, was not evidence'to show that the fence was insufficient; and that the jury had no right to act upon any supposed knowledge of their own, and to say that a barrier two feet and eight inches in height was not sufficient to turn away peacable cattle.
It seems to us, however, that the case was not one which required evidence of expert witnesses, but that the jury acting upon a knowledge common to all men of affairs might be permitted properly to say that a once properly constructed fence of sufficient height and strength to turn cattle might be deemed insufficient and inadequate if permitted to remain in a broken condition in places, leaving a barrier only two feet and eight inches in height.
The learned counsel for the defendant does not go, in his argument, to the extent of claiming that other evidence should have been given of an expert character to the effect that a fence two feet and eight inches in height is insufficient, but he bases his argument upon the ground that there is no evidencé whatever that the cow went over the fence at the point where the boards were broken. Inasmuch, however, as the possibility of the cow getting through the gate must be necessarily abandoned in the argument for the reasons above stated, the jury was warranted from the evidence to draw the conclusion that the escape was made over the lowest part in the fence. There was no eye-witness to the escape, and none was required in order to sustain an intelligent verdict where the circumstances point so unerringly to the conclusion that the cow could not open the gate, and could have got upon the defendant’s premises only at the lowest point in the fence where the boards had been so long removed.
*75 Much stress has been laid by counsel for the defendant upon the case of Morrison v. The N. Y. & N. H. R. R., 32 Barb., 568, as an authority against the maintenance of this action. The thing decided, however, in that case was only this, in an action against a railroad company for negligence in running over and killing a horse,where the injuries are alleged to have occurred in consequence of a defect in a fence which the defendant was bound to main ■ tain, if there is any evidence that the fence was insufficient and defective, ■ and that the defendant’s agents knew or had notice thereof, and the horse got upon the track by means of such defect, it is erroneous to nonsuit the plaintiff. And if, in such a case, there is any evidence that the horse got upon the railroad track over or through a fence which the defendant was bound to maintain, it should be submitted to the jury ; but not so of the evidence that possibly the horse so got upon the track. And further, if there is no evidence that the horse got upon the track in the manner alleged, the plaintiff should be nonsuited. That case is distinguishable from the one at bar, as is shown by the language of the opinion of Judge Allen, who, speaking for the court, says at pages 572-3, “ The defect in the fence, if there was any, was in its original construction, and not by reason of its decay or getting out of repair. * * * Upon the evidence there was no proof that the fence was defective or insufficient.” The necessary inference from the evidence was that the bars had been left open by the hired man.
Judge Allen further says: “Upon this evidence the presumption was that the horses had escaped through the bars left open by the hired man when he turned out the oxen ; and this presumption is strengthened by the absence of the hired man and the omission to prove the condition of the bars when they were first seen in the morning.”
The defect in the fence complained of, however, in this action is not of its original construction, but in the omission to maintain it as the defendant had deemed it to be necessary to construct it at the outset. The company had suffered it to become out of repair. It was broken down from a height of upwards of four feet to the height of only two feet, eight inches.
The plaintiff, in our judgment, satisfied the duty imposed upon him by the rules of evidence, and actually did give some proof from which an inference could be derived safely by the jury that the cow went over the fence where these boards were broken at a place not far remote from the gate.
The judgment of the county court should be reversed, and that of the justice of the peace affirmed, with costs.
Barker, P. J., and Dwight, J., concur.