THE STANDARD OIL COMPANY v. GILBERT & COMPANY.

A written contract creating a commercial agency for one year and fixing the agent's compensation for services, wharfage, storage and paying for the goods sold, at a gross sum per month, having been renewed expressly for the next year, and the agency having in fact continued for several successive years afterwards, both parties in all their dealings conforming to the terms of the original contract, there was a tacit renewal of the same from year to year, and the principal could not, by notice given pending the last year's services, terminate the contract before the expiration of that year, so as to deprive the agent of his stipulated monthly compensation for the unexpired portion of the year. Though the mere power of revocation existed, the right to revoke did not exist, neither party having retired from or ceased to do business, and the alleged reason for the revocation being only that the price of the goods dealt in had become and might possibly remain low.
March 31, 1890.

Contracts. Principal and agent. Revocation. Before Judge HARDEN. City court of Savannah. July term, 1889.

Action on account against Gilbert & Co.; and plea of set-off, with prayer for judgment for the excess claimed over plaintiff's demand. Verdict in favor of the defendants for that excess. The decision states the facts of the case.

DENMARK, ADAMS & ADAMS, for plaintiff.

GARRARD & MELDRIM, for defendants.

BLECKLEY, Chief Justice.

There was no dispute or controversy as to the facts. Their legal significance, nothing else, was for determination, the parties having agreed that the only question should be whether the contract could be terminated before October 1st by the notice of December 15th, 1886. The presiding judge decided this question in the negative, and directed a verdict accordingly. The notice referred to, dated December 15th, 1886, was in these terms: "Owing to the present low prices of oil,

and the possibility of a continuance of the same, we cannot, after December 31st, 1886, continue to allow you $75.00 per month rebate, as heretofore. We solicit a continuance of your orders, and will be glad to allow you jobbers' rebate, the same we are now paying the other merchants." The contract between the parties, as originally made, was in writing. It bore date October 1st, 1880. The obligations which it imposed on the agents (Gilbert & Co.) were these: (1) To sell coal oil for their principals at such prices as the latter might fix from time to time; (2) to handle no other oil for the period of one year from the date of the contract; (3) to receive the oil at their wharf and store it in their warehouse without charge for wharfage or storage; (4) to pay on the 10th of each month for all oil sold during the previous month. The obligations imposed upon the principals were: (1) To pay to the agents $75.00 per month for one year from the date of the contract; (2) to keep them supplied with merchantable oil at all seasons of the year; (3) to deliver the oil at their wharf or warehouse; (4) to pay them one dollar per barrel on the excess, if any, over 900 barrels sold by them during the year for which the agreement was made. Within a month or two after the year expired, the contract was renewed, as the result of written correspondence, for a second year, terminating October 1st, 1882. No subsequent negotiations took place, but the parties continued to deal in harmony with the terms of the written contract through all subsequent years up to December 15th, 1886, when the notice above recited was given. Afterwards, and until October of the following year, their dealings went on, but the oil sent during that period was furnished and received without prejudice to the claim of either party. The credit of $75.00 per month in the oil account, as kept by the principals, ceased with December,

1886; and from that time forward the credits entered as rebates amounted in the aggregate to only $18.84. In other words, compensation for nine months, which according to the written contract would be $675.00, was reduced to $18.84. To which of these sums were the agents entitled? According to its letter, the notice did not seek to terminate the contract in any respect except as to the amount of compensation. It merely warned the agents that the principals would not pay as they had done theretofore, but would substitute the ordinary rebates allowed the trade. It did not propose to discharge the agents from any of their obligations, which, as we have seen, were not to handle any other oil; to receive and store without charge, and to pay unconditionally on the 10th of each month for all oil sold during the previous month. It admits of no doubt that the notice thus construed would not be effective for any purpose. But construing it, as both parties probably did, to be an effort to terminate the agency altogether, and release both parties from any and all obligation as to future dealings after January 1st, 1887, the question is, was there a legal right so to do? We think not. It is clear that during the first or second year both parties were bound, not from month to month only, but throughout the year, as there was an express undertaking on the part of the oil company to keep the agents supplied with oil at all seasons of the year, and to pay them $75.00 per month for one year. The case does not fall within the principle of such cases as Burton *v.* Great Northern Ry. Co., 9 Exch. 507; Rhodes *v.* Forwood, L. R. 1 App. Ca. 256; and Orr *v.* Ward, 73 Ill. 318, in which it was ruled that it was not obligatory on the employer to furnish business to the agent or employé throughout the whole period embraced in the contract, the reason of such ruling being that the employer had not stipulated so to do.

Here, on the contrary, the stipulation was no less express on behalf of one party than of the other.   If such a notice as we are considering would not have dissolved the engagement pending the first or second year of the service, it could not have that effect pending the seventh year unless, by reason of not having been expressly renewed or continued after the second year, it ceased to be a contract for a whole year and became indefinite as to time, or a contract at will only.   Tested by the law of ordinary hiring, or of master and servant, there can be no doubt that services rendered without a new agreement after the contract term has expired are to be compensated at the same rate, and to that extent the prior contract is renewed or continued in force. N. H. Iron Factory *v.* Richardson, 5 N. H. 294; Wallace *v.* Floyd, 29 Pa. St. 184; Ranck *v.* Albright, 36 *Id.* 367; Nicholson *v.* Patchin, 5 Cal. 474; Vail *v.* Jersey, etc. Co., 32 Barb. 574; Weise *v.* Board of Supervisors, 51 Wis. 564.   And where the term of employment does not exceed one year, the authorities seem to us decisive that the prior contract is renewed or continued for an equivalent time, as well as at an equal rate.   "Where the hiring is under a special agreement, the terms of the agreement must of course be observed.   If there be no special agreement, but the hiring is a general one without mention of time, it is construed to be for a year certain.   If the servant continue in the employment beyond that year, a contract for a second year is implied, and so on."   Smith's Mer. Law, 266; same by Pomeroy, §508.   "Where a person has been employed by another for a certain definite term at fixed wages, if the services are continued after the expiration of the term in the same business, it is presumed that the continued services are rendered upon the same terms; but this is a mere presumption, which may be overcome by proof of a new contract, or of facts and circumstances

that show that the parties in fact understood that the terms of the old contract were not to apply to the continued services." Wood's Mas. and Ser. §96. "A person who has been previously employed by the month, year or other fixed interval, and who is permitted to continue in the employment after the period limited by the original employment has expired, will, in the absence of anything to show a contrary intention, be presumed to be employed until the close of the current interval, and upon the same terms." Mech. on Agency, §212. "Tacit relocation is a doctrine borrowed from the Roman law. It is a presumed renovation of the contract from the period at which the former expired, and is held to arise from implied consent of parties, in consequence of their not having signified their intention that the agreement should terminate at the period stipulated. . . Though the original contract may have been for a longer period than one year, the renewed agreement can never be for more than one year, because no verbal contract of location can extend longer." Fraser on Mas. and Ser. 58. This last is a Scotch authority, but on this question the law of Scotland seems to coincide with our own, and with the law of Louisiana. See Alba *v.* Morarity, 36 La. An. 680; Lalande *v.* Aldrich (La.), 6 So. Rep. 28; Tallom *v.* Mining Co., 55 Mich. 147; Sines *v.* Supts. of the Poor, 58 Mich. 103; McCullough Iron Co. *v.* Carpenter, 67 Md. 554; Tatterson *v.* Suffolk Mfg. Co., 106 Mass. 56; Capron *v.* Strout, 11 Nev. 304; Beeston *v.* Collyer, 4 Bingh. 309. In the argument notice was taken of the difference between the English and the American rule as to presuming that an indefinite hiring is for a whole year. It was said that in the former country this presumption holds, but in the latter it does not. Wood's Mas. and Ser. §136. We think, however, this presumption has nothing to do with the matter; for whether the first

hiring has its duration fixed by express or implied contract, if it be fixed in either way, the term (if not longer than one year) admits of duplication by tacit as well as express agreement.    When we have a definite term of service, no matter how we get it, subsequent service of the same kind, where no new contract is made and nothing appears to indicate a change of intention, may be referred to the previous understanding and to a tacit renewal of the engagement.

Thus far we have dealt with the question without any special reference to the law of agency as distinguished from that of master and servant generally.    This was a commercial agency, comprehending not only personal services, but the use of a wharf for landing oil and of a warehouse for storing it, and attended with a guaranty of the proceeds of all sales, the agents being obliged to pay within ten days for the oil sold in each month.    The agents, if not *del credere* agents technically, were upon the same footing as such; they had to pay for all the goods they sold.    No doubt the power of revoking the agency pending a current year's business existed, but the right to revoke it without sufficient cause did not exist; and a wrongful revocation leaves the principal liable to make reparation to the agent.    Mech. on Agency, §§209, 614, 620, 621; Code, §2183.    Here no cause was assigned but the low price of oil and the prospect of its continuance.    Neither of the parties had retired, or so far as appears, wished to withdraw from business; and according to the evidence, fifteen days' notice would be too short a time within which to make arrangements with other dealers for oil; to do that would require several months.    We can see nothing whatever in the record to justify a revocation of the agency by such a notice as was given, and we agree with the presiding judge in the opinion that the oil company had no legal right to terminate the contract

before October 1st, 1887, without mutual consent. The engagement was one from year to year, and not merely at the will of either party. There was no contention that the amount claimed by the defendants in excess of the plaintiffs' demand was more than they ought to recover upon their plea of set-off, if they were entitled to recover at all; and the verdict being for that amount, it was correct, and the court did not err in refusing a new trial.                    *Judgment affirmed.*