# NICHOLAS M. BELL v. PEPER TOBACCO WAREHOUSE COMPANY, Appellant.

### Division Two, July 1, 1907.

1. **EMPLOYMENT: Salary Fixed After Service Rendered: Continuation.** After plaintiff had been in defendant's employment as manager for three full years the board of directors adopted a resolution fixing his salary for the first year at one thousand and five hundred dollars, for the second year at one thousand and eight hundred dollars and for "the present year at two thousand and five hundred dollars." *Held,* that, the resolution having reference only to past services, the continuation of plaintiff in the same service after said resolution was adopted raised no presumption · that the services thereafter for twelve years rendered were rendered upon the ·same terms as for the third year of plaintiff's employment.

2. ——: ——: ——: **Express Contract: Recovery.** And plaintiff having sued on an express contract between himself and defendant, by which he was employed as manager at a salary of one thousand and five hundred dollars for the first year, one thousand and eight hundred dollars for the second year, two thousand and five hundred dollars for the third year, and two thousand and five hundred dollars for each of the twelve years thereafter, and no contract being shown beyond said resolution, which by its terms refers to past services then already rendered, he cannot recover. He can only recover for the services rendered after the adoption of said resolution upon an implied contract for their reasonable value, upon a *quantum meruit.*

3. ——: ——: ——: ——: ——: **Vice-President and Director.** Where plaintiff sues upon a special contract to pay him a fixed salary, and fails to establish such contract, he cannot recover, whether he be vice-president and a director of defendant corporation or not. But where there is evidence tending to show that the services rendered were outside the scope and line of his duties as director, and that they were rendered with the understanding by the officers of the company that they were to be paid for, he may, in a *quantum meruit,* recover the reasonable value thereof.

4. ——: **Salary As Public Officer.** A defense that plaintiff while he was manager of defendant corporation held a public office and received a salary ·therefrom and that any contract he held with said company for a salary was against public policy and should not be recognized by the courts, should be pleaded in order to be available.

Appeal from St. Louis City Circuit Court.—*Hon. H. D. Wood,* Judge.

REVERSED AND REMANDED.

*Klein & Hough* for appellant.

(1) There is no evidence in the record of any express contract between plaintiff and defendant relating to his employment as manager, or relating to the amount of his salary after the 1st day of May, 1892. (a) The evidence and especially the account of the plaintiff on defendant's books kept by plaintiff himself negatives any such express contract. (b) The evidence clearly shows that aside from the resolution of June 9, 1892, there is no entry in any of defendant's books making any reference to, or giving the plaintiff credit for, or charging the defendant with any salary on plaintiff's account; and the evidence shows that plaintiff never made any claim therefor until shortly before the institution of this suit. (2) Plaintiff being a director and vice-president of the defendant company is not entitled to recover any compensation for services rendered as manager unless such compensation has been fixed by a by-law or resolution of the corporation before the services were actually rendered, or unless such services were entirely outside of the line of his duty as director and vice-president, and were performed at the instance of defendant's officers, whose powers were of a general character, and under such circumstances as to raise a fair presumption that the parties intended and understood that they were to be paid for. Bennett v. St. Louis Car Roofing Co., 19 Mo. App. 349; Besch v. Western Carriage Mfg. Co., 36 Mo. App. 333; Pfeiffer v. Lansberg Brake Co., 44 Mo. App. 67; Rose v. Carbonating Co., 60 Mo. App. 32; Rem-Remmers v. Seky, 70 Mo. App. 364; Beach v. Stouffer, 84 Mo. App. 395; Taussig v. Railroad, 166 Mo. 33; Wagner v. Edison Electric Illum. Co., 177 Mo. 62. (3) The

resolution of the directors of June 9, 1892, related to services rendered by plaintiff prior to that time, plainly the services rendered up to May 1, 1892. This resolution does not relate to or embrace any services to be rendered thereafter, and is therefore no evidence of any express contract to pay plaintiff a definite sum for services rendered thereafter.

*Joseph S. Laurie* for respondent.

(1) The resolution should have read and should now be construed as reading, "for the past and present year twenty-five hundred dollars." However, should the resolution be taken as it stands and construed literally, the legal effect, for the purpose of fixing the salary of the manager at twenty-five hundred dollars for that year and the succeeding years of his service without notice of any change in the terms of service, would be the same. If, on the other hand, by the term "present year" was meant the third year, and the board intended thereby to fix the compensation of manager for the third year at twenty-five hundred dollars, a promise to pay him the same compensation for the succeeding years during which the warehouse company employed him as manager, was equally implied, in the absence of any notice to the contrary. When the board of directors fixed plaintiff's salary at twenty-five hundred dollars, and continued his employment in the same capacity for succeeding years without notice of any change, there was an implied promise on the part of the company to continue said salary during such service. Wood, Master and Servant, sec. 96; 20 Am. and Eng. Ency. Law (2 Ed.), 16; O'Hara v. Mfg. Co., 2 N. Y. City Rep. 158; Ins. Co. v. Barbar, 93 N. E. 1024; Farmers' Loan & Trust Co. v. Railroad, 152 N. Y. 251; Railroad v. Owen, 121 Ala. 505; Tatterson v. Mfg. Co., 106 Mass. 56; Crane Bros. Co. v. Adams, 142 Ill. 125; Rose v. Carbonating Co.,

60 Mo. App. 28. (2) It is beyond dispute that it was intended and understood between the parties that his services as manager were to be paid for, and the fact that plaintiff in June, 1892, while manager, accepted five shares of stock and consented to become a director and vice-president of the company, cuts no figure in the case. It cannot be said that it was expected by either party that plaintiff, by reason of having become an officer of the corporation, would not continue to be compensated for the performance of the arduous and exacting duties attaching to the situation of manager, and which were entirely beyond the scope of his duties as director and vice-president. Taussig v. Railroad, 166 Mo. 28.

BURGESS, J.—This is a suit to recover $18,684.87 alleged to be a balance due plaintiff on account of salary as manager of defendant from May 1, 1889, to February 15, 1904, at the rate of one thousand five hundred dollars for the first year, eighteen hundred dollars for the second year, and twenty-five hundred dollars for the third year, and at the rate of twenty-five hundred dollars per year from May 1, 1892. The petition originally contained two counts, the first upon an alleged contract, and the other upon *quantum meruit;* but the plaintiff, after defendant's motion for nonsuit at the close of plaintiff's case had been overruled, and before defendant had begun the introduction of its evidence, dismissed as to the second count, electing to stand upon the alleged contract alone.

The answer to the first count admits defendant's incorporation, and that plaintiff was its manager for three years, from May 1, 1889, but alleges that he had been paid in full for his services as such manager for said period, and denies all other allegations of said count. Further answering, defendant says that if plaintiff did act as manager after the expiration of said

three years, he was a director and vice-president of the corporation, and neither by the charter or by-laws, nor by any action of the board of directors, nor by an agreement between him and the board, was he entitled to receive any remuneration for such services. Defendant, by way of counterclaim, prayed judgment against plaintiff for four thousand three hundred dollars, which it alleged to be the reasonable rental value of a portion of defendant's warehouse at Twelfth and Market streets in the city of St. Louis, which defendant alleged plaintiff occupied as excise commissioner of the city of St. Louis from July 1, 1893, to January 31, 1897, a period of forty-three months, at one hundred dollars per month. Defendant further alleged that its books were in the sole charge of plaintiff, and none of defendant's officers except plaintiff knew until after this suit was brought that said rent had not been paid.

The reply is a general denial, together with a plea of the Statute of Limitations as to said counterclaim.

A jury was waived, and a trial had before the court, resulting in a judgment in favor of plaintiff for the amount sued for, with interest from the date of suit, aggregating $19,394.49, and in favor of plaintiff on the counterclaim, from which judgment defendant appeals.

The evidence showed that plaintiff had been in business in St. Louis for many years prior to 1889, and was experienced in the tobacco business. In the year 1888, being then superintendent of foreign mails of the United States, at a salary of three thousand dollars per annum, with office in Washington, D. C., he married the daughter of Christian Peper, then president of the defendant company, a Missouri corporation, doing a general tobacco warehouse and commission business at Twelfth and Market streets, in the city of St. Louis. In April, 1889, plaintiff resigned his said

position, and returned to St. Louis, his return being at the request of Christian Peper. On May 1, 1889, plaintiff became manager of the defendant company, with full control of the business. The company at that time was doing no business at all except storage, and this on a very small scale, deriving an income therefrom of about sixty dollars per month. The working force consisted of a superintendent, with a salary of eighteen hundred dollars per year; a bookkeeper with a salary of one thousand five hundred per year, and three or four laborers. Plaintiff discharged the superintendent, and at his request the office of superintendent was abolished by the board of directors, plaintiff as manager assuming such duties. Other changes were made by him for the purpose of decreasing the expenses of carrying on the business. As a result of plaintiff's management the storage business was largely increased, and the buying and selling branch of the business revived, and at the end of the first year, there was a net profit of ten thousand six hundred dollars. The business continued to increase under plaintiff's management, and Christian Peper transferred to him five shares of the warehouse company's stock, and caused him to be elected director and vice president on June 2, 1890. The said five shares were immediately afterwards transferred back to Christian Peper. No definite arrangement had been made with plaintiff as to salary when he entered into the employ of defendant on May 1, 1889, but during the three following years he had drawn and charged himself on the books of the Warehouse Company with such sums as he needed from time to time. The amount thus drawn for the first year was nine hundred dollars; for the second year, one thousand five hundred and fifty; for the third year, one thousand six hundred and seventy-five dollars. Such was the situation when, at a meeting of the

board of directors, held June 9, 1892, ''on suggestion of the president, a motion by F. C. Peper, seconded by C. Peper, Jr., to compensate N. M. Bell, the manager, for the first year a salary of one thousand five hundred dollars; for the second year, one thousand eight hundred dollars, and for the 'present year,' two thousand five hundred dollars, was carried,'' as appeared by the minute book of the defendant company. At that time the directors of the company were Christian Peper, Charles G. Peper, Christian Peper, Jr., and N. M. Bell, and it would appear that Christian Peper owned all the stock of the company except such as was owned by his said sons. It appears from the evidence that Christian Peper treated the warehouse company property as his own. He was at that time, and had been for years, engaged in the business of manufacturing tobacco, and had an account on his books with the Warehouse Company, wherein he charged and credited as the case might be the cash advanced for, and received by him from, the warehouse company.

When the year commencing May 1, 1892, expired plaintiff's account on the books of the warehouse company showed that during that year he had drawn sums aggregating $2,184.50. Nothing was said to him by Christian Peper or anyone else in behalf of the corporation at the expiration of said year, or at any other time, as to salary, and he remained in the employment of the Warehouse Company as manager until February 15, 1904. The only reference to ''salary'' is in the above-quoted resolution from the minute book of the company; but it would not appear that plaintiff in any year, from first to last, drew as much as two thousand five hundred dollars.

The following summary, attached to plaintiff's petition, shows the aggregate amount of cash drawn by him each year during his service as manager:

205 Sup—31

| | |
|---|---:|
| Year ending May 1, 1890.........$ | 900.00 |
| Year ending May 1, 1891.......... | 1,550.00 |
| Year ending May 1, 1892.......... | 1,675.00 |
| Year ending May 1, 1893.......... | 2,184.50 |
| Year ending May 1, 1894.......... | 1,119.05 |
| Year ending May 1, 1895.......... | |
| Year ending May 1, 1896.......... | |
| Year ending May 1, 1897.......... | .90 |
| Year ending May 1, 1898.......... | 467.80 |
| Year ending May 1, 1899.......... | 1,447.35 |
| Year ending May 1, 1900.......... | 1,740.00 |
| Year ending May 1, 1901.......... | 1,260.00 |
| Year ending May 1, 1902.......... | 1,200.00 |
| Year ending May 1, 1903.......... | 1,350.00 |
| From May 1, 1903, to Feb. 15, 1904, (nine and one-half months).. | 1,700.00 |
| | $16,594.60 |

Plaintiff introduced in evidence the minutes of a meeting of the board of directors of defendant company of date June 6, 1894, which recited that the report of "N. M. Bell, manager," had been submitted by him to the board and ordered filed. This was the first meeting of the board after the said meeting of June 9, 1892.

From the commencement of plaintiff's management, he, by direction of Christian Peper, turned over to the latter, daily, all the cash receipts of the company, and at short intervals, about once a week or oftener, as he required money to pay bills and operating expenses, he would submit to Christian Peper a statement, on the printed letter head of the company whereon was printed the name of "Nicholas M. Bell, Manager," and make an order or requisition on Christian Peper for the amount of cash needed for operating expenses. Said orders were always promptly honored by Christian Peper, and out of the cash thus received for operating expenses plaintiff was accustomed to

take, from time to time, on account of salary, such sums as he needed, and the same would, by his direction, be charged by the bookkeeper of the company to plaintiff's account on the books of the company. This continued until March, 1902, when Christian Peper organized his manufacturing business into a corporation known as the Christian Peper Tobacco Co., of which he became president, and then the account of the defendant Warehouse Company was transferred by Christian Peper to the Christian Peper Tobacco Co., and thereafter, by his direction, the cash receipts of the Warehouse Company were turned over to the Christian Peper Tobacco Co., and the orders and requisitions of plaintiff, as manager, for money, were made upon the Christian Peper Tobacco Co., and plaintiff continued, as before, to take therefrom such sums as he needed, and have the same charged to his account on the books of the Warehouse Company.

It also appeared that during plaintiff's management he turned over to Christian Peper as profits of the business, after deducting several thousand dollars expended by way of repairs and operating expenses, including amount drawn by plaintiff for his own use, the sum of ninety thousand dollars in cash, but that from the year 1900 on, owing to the fact that the various tobacco factories which had been profitable customers of the Warehouse Company had been absorbed by the tobacco trust, the business of the warehouse had declined, and its principal business consisted in the storage of tobacco owned by Christian Peper. About this time plaintiff wished to resign as manager and go into other business, and so expressed himself to Christian Peper. A conversation on the subject between plaintiff and Christian Peper was testified to by Charles G. Peper, a son of Christian Peper, and one of the directors of the Warehouse Company. Such testimony is as follows:

Q. What was the substance of the conversation?
A. Well, Mr. Bell told him—he says, "Father you ought to do something with that warehouse property as it does not pay to run it." He says, "Now, Nick," he says, "don't worry about that; you stay there. I put you there; now stay there, because I can do nothing with that warehouse property until I get a place to put my tobacco that is now in the warehouse,—that was in the warehouse at that time—and then after I can get some place to put the tobacco that is in the warehouse, I will see what I can do with that property."

Q. Well, what, if anything, did Mr. Bell say to him about leaving? A. Mr. Bell was talking to him two or three times about leaving.

Q. What did Mr. Peper say about that? A. He didn't want him to leave. He said, "Stay right there, Nick."

Q. And he told him to stay right there? A. He says, "I'll tell you when to quit."

Christian Peper died on September 26, 1903, and his son, Frederick C. Peper, succeeded him as president of the Christian Peper Tobacco Co., and assumed control of the financial affairs of the Warehouse Co. In February, 1904, Frederick, as executor of Christian Peper, deceased, sold the property of the Warehouse Company under a deed of trust for more than two hundred thousand dollars in favor of Christian Peper, and the Warehouse Company went out of existence. When plaintiff, then, applied to Frederick C. Peper for a settlement of his salary, he was referred by Peper to Mr. Galt, his attorney, who repudiated the claim, whereupon plaintiff brought this suit.

It was shown by the testimony that plaintiff was, from June 1, 1893, to January 31, 1897, excise commissioner of the city of St. Louis, and occupied during his term of office a portion of the Warehouse Company building as his office. Upon this subject plaintiff testi-

fied that, after receiving his appointment as excise commissioner, he, with the assent of the Warehouse Company, fitted up a corner of the warehouse on the first floor for his office. He also stated that the duties of such office in no way interfered with the performance of his duties as manager of the Warehouse Company.

There was no evidence that the defendant corporation, by any action of its stockholders or board of directors, ever promised or agreed to pay plaintiff any salary, except the aforesaid resolution of June 9, 1892; nor did the books and records of defendant show any entry or account in which there was any charge made by plaintiff for salary as such. The books of the defendant did not show any credit on account of salary to plaintiff, his account thereon being wholly confined to charges against himself and in favor of the company. There was no settlement ever asked by plaintiff during the period of twelve years, from June 9, 1892, to February 15, 1904, nor did plaintiff testify that he ever made any claim for salary until just before this suit was brought.

At the request of plaintiff, and over the objection and exception of defendant, the court declared the law of the case to be as follows:

"If the finding be for plaintiff, then he is entitled to receive as follows: One thousand five hundred dollars for the first year's service, as manager; one thousand eight hundred dollars for the second year's service, and at the rate of two thousand five hundred dollars per year for each successive year's service down to February 15, 1904 (such amounts aggregating $35,-279.17), less such payments or credits as it may appear from the evidence plaintiff had received during said entire period on account of his salary as manager, and upon the balance thus found to be due plaintiff he is entitled to interest at the rate of six per cent per an-

num from the date at which it appears from the evidence payment of the amount due him on account of salary was demanded by him of defendant and refused.

"The court declares the law to be that when a person has been employed by another for a certain definite term at fixed wages or salary, if the services are continued after the expiration of said term, in the same business, without any new agreement, it is presumed that the continued services were rendered upon the same terms.

"It is admitted by defendant's second amended answer that plaintiff was the manager of defendant on the first day of May, 1889, and for three years thereafter, and it is shown by the record of defendant that at a meeting of the board of directors of defendant held June 2, 1892, the salary of plaintiff, as such manager, was fixed at one thousand five hundred dollars for the first year, one thousand eight hundred dollars for the second, and for that year (commencing May 1, 1892) two thousand five hundred dollars; and if it be shown by the evidence in the case to be true that upon the expiration of said third year, plaintiff continued in the employment of defendant as such manager from that time until February 15, 1904, without notice from defendant of any change in salary, then the court declares the law to be that plaintiff became, and is, entitled to salary at the rate of two thousand five hundred per year for each successive year's service as manager, from the expiration of said third year down to February 15, 1904."

The court, of its own motion, and over the objection and exception of defendant, declared the law as follows:

"The court declares the law to be, that the mere fact that on June 9, 1892, the board of directors of defendant passed a motion at a meeting of said board to compensate plaintiff for his first three years of service

as manager of the defendant for the payment of salary for the first year of one thousand five hundred dollars; for the second year, one thousand eight hundred dollars, and for the third year, two thousand five hundred dollars, if the court believes from the evidence that said three years had ended prior to said ninth day of June, 1892, then the making of said motion to so compensate the defendant for said time, does not in the absence of any evidence as to plaintiff's services as manager imply any promise or agreement on the part of the defendant to pay the plaintiff two thousand five hundred dollars a year after said first day of May, 1892, up to the fifteenth day of February, 1904, or any part thereof."

At the instance of defendant, the court declared the law of the case to be as follows:

"The court declares the law to be that a promise or agreement of payment to the plaintiff by defendant for services rendered as manager to it, after May 1, 1892, cannot be implied or presumed from the mere fact that such service was rendered, and the burden of proof is upon the plaintiff to show such promise or agreement on the part of the defendant, and unless that has been shown by the plaintiff, then the finding of the court must be in favor of the defendant on plaintiff's petition."

The defendant asked the court, and the court refused, to declare the law to be as follows:

"The court declares the law to be, that under the pleadings and evidence in this case, its finding must be in favor of defendant on plaintiff's petition.

"If the court finds from the evidence that the plaintiff became a director of the defendant on the second day of June, 1890, and vice-president of the defendant on the third day of June, 1890, then the action of the board of directors on the ninth day of June, 1892, declaring that the plaintiff should be compen-

sated for his services in so far as it sought to compensate him for his services as manager after June 3, 1890, was illegal, and without authority, and void, and the salary of two thousand five hundred dollars a year as stated on said 9th day of June by the board of directors could not be made the basis for holding that said board of directors or the defendant had promised or agreed to pay the plaintiff two thousand five hundred dollars a year during all his service for the defendant as manager, after May 1, 1892.''

To the action of the court in refusing to declare the law to be as above, defendant duly excepted.

It is insisted by defendant that the court committed error in overruling defendant's demurrer to the evidence at the close of the whole case.

The first count of the petition upon which the case was submitted to the court, sitting as a jury, is based upon an express contract between plaintiff and defendant, by which plaintiff was employed by defendant as manager at a salary of one thousand, five hundred dollars for the first year, eighteen hundred dollars for the second year, and twenty-five hundred dollars for the third year. The only evidence introduced by plaintiff tending to establish such a contract is the resolution of the board of directors of the defendant company, adopted at a time when plaintiff was one of the members of said board, and which is as follows:

''On suggestion of the president, a motion by F. C. Peper seconded by C. Peper, Jr., to compensate N. M. Bell, the manager, for the first year at a salary of one thousand five hundred dollars; for the second year, one thousand eight hundred dollars, and for the present year, two thousand five hundred dollars, was carried.''

This resolution was adopted June 9, 1892, at which time plaintiff had already completed three years' service as manager of defendant company, the third

year terminating May 1, 1892. Evidently the resolution of the board is relied upon by plaintiff as the contract or basis of the contract upon which he sues, and under which he claims that two thousand five hundred dollars continued to be his yearly salary from that date down to February 15, 1904.

When an employee's salary is fixed by contract at a certain sum per year or month, and he continues to render services after the expiration of such period, without any new agreement, the law presumes, there being no evidence to the contrary, that the continued services were rendered upon the same terms. [Ewing v. Janson, 57 Ark. 240; Standard Oil Co. v. Gilbert, 84 Ga. 717; Crane Bros. Mfg. Co. v. Adams, 142 Ill. 125; Ingalls v. Allen, 132 Ill. 170; Tatterson v. Suffolk Mfg. Co., 106 Mass. 56; Adams v. Fitzpatrick, 125 N. Y. 124; Ranck v. Albright, 36 Pa. St. 367; Wood on Master and Servant, sec. 96; Home Fire Ins. Co. v. Barber, 67 Neb. 644; Rose v. Carbonating Co., 60 Mo. App. 28.]

While it is conceded by defendant that the use of the words "for the present year" might possibly justify the inference that they had reference to the services of the plaintiff to be rendered in the year beginning May 1, 1892, it is argued that such inference would be a strained one; that the evident intent of the directors was to deal only with the services which plaintiff had rendered prior to May 1, 1892 and that they intended by the use of the words "for the present year" to include only the services rendered during the third year of his employment. Defendant contends that this is the construction which the plaintiff has put thereon by his petition, and that he is bound thereby. We think the only fair and reasonable construction of the words in question is that placed thereon by plaintiff himself, which is that they referred to and included only the services rendered by plaintiff during the third year of

his employment. The resolution, then, having reference only to past services, the continuation of plaintiff in the same service after said resolution was passed raised no presumption that the services thereafter rendered were rendered upon the same terms as for the third year of plaintiff's employment.

The authorities cited and relied upon by plaintiff as supporting his case do not do so, and are in no way applicable thereto, for all those cases are bottomed upon express contracts by which a certain sum was agreed to be paid for services to be rendered for a specified term, and the services were continued after the expiration of the contract, without a new one being entered into; and it was held in all of those cases that the law would presume that the services were rendered upon the same terms as before. Our attention has not been called to any authority, nor have we been able to find any after diligent search, which holds that any such presumption arises when the contract agreed upon in the first instance was for compensation for past services only, without any reference to services thereafter to be rendered. It follows that as plaintiff failed to prove that the services for which compensation is sought to be recovered were rendered in pursuance of a special contract entered into between himself and the defendant, he cannot recover in this action, and could only recover for said services upon an implied contract for their reasonable value.

Defendant also contends that a director or officer of a corporation cannot claim compensation for services rendered the corporation unless such compensation has been fixed by by-law or resolution of the corporation before the services were actually rendered, or unless such services are entirely outside the line of his duty as such officer, and performed at the instance of the officers of the corporation whose powers are of a general character, and under such circumstances as to

raise a fair presumption that the parties intended and understood they were to be paid for; that if the agreement be not specific as to the amount to be paid, the corporation can be made liable only for the reasonable value of the services, and recovery only be had upon a *quantum meruit.*

It is evident that plaintiff can only recover in this action upon an express contract, and to entitle him to a recovery it devolved upon him to show that the defendant corporation expressly agreed, before the services were rendered, to pay plaintiff two thousand five hundred dollars per year so long as he continued in the service of the company as its manager. In the absence of a specific agreement as to the amount of salary to be paid the plaintiff, it is clear that the defendant can be held liable only for the reasonable value of the services rendered, and, as we have indicated, plaintiff could only recover for such services upon a *quantum meruit.* That this is the general rule is shown by the following authorities: Bennett v. St. Louis Car Roofing Co., 19 Mo. App. 349; Besch v. Western Carriage Mfg. Co., 36 Mo. App. 333; Pfeiffer v. Lansberg Brake Co., 44 Mo. App. 59; Rose v. Carbonating Co., 60 Mo. App. 28; Remmers v. Seky, 70 Mo. App. 364; Beach v. Stouffer, 84 Mo. App. 395.

These cases and many others were carefully reviewed in the case of Taussig v. Railroad, 166 Mo. 28, in which Brace, J., speaking for the court, said: "The rule applicable to such a case, to be deduced from the modern and best-considered cases, is, we think, that a party, although a director or other officer of a corporation, may recover the reasonable value of necessary services rendered to a corporation, entirely outside of the line and scope of his duties as such director or officer, performed at the instance of its officers, whose powers are of a general character, upon an implied promise to pay for such services, when they were ren-

dered under such circumstances as to raise a fair presumption that the parties intended and understood they were to be paid for or ought to have so intended and understood," citing Fitzgerald Construction Co. v. Fitzgerald, 137 U. S. 98; Pew v. Gloucester Nat. Bank, 130 Mass. 391; Bassett v. Fairchild, 132 Cal. 637; Nat. Loan & Inv. Co. v. Rockland Co., 94 Fed. 335; Brown v. Silver Mines, 17 Colo. 421; Greensboro Company v. Stratton, 120 Ind. 296; Santa Clara Min. Assn. v. Meredith, 49 Md. 389; Rogers v. Railroad, 82 Minn. 25; Shackelford v. Railroad, 37 Miss. 202; Chandler v. Monmouth Bank, 1 Green (N. J. L.) 255; Cheeney v. Railroad, 68 Ill. 570; Citizens' Nat. Bank v. Elliott, 55 Iowa 104. The same rule is announced in Wagner v. Edison Electric Ill. Co., 177 Mo. 44.

While there is no direct evidence in this case of any express contract to pay plaintiff a fixed sum for his services, there is evidence tending to show that the services rendered by him were in a measure outside of the line and scope of his duties as director, and that they were rendered with the understanding by the officers of the company that they were to be paid for, but upon this last proposition the evidence was conflicting. But as there was no express contract to pay for said services, plaintiff cannot recover in this action therefor. The demurrer interposed to the evidence should have been sustained.

A final contention is that, as it was shown upon plaintiff's cross-examination as a witness in his own behalf that he held the public office of excise commissioner for a period of three and one-half years during the term of his service as manager of the warehouse company, any contract by plaintiff with said company for salary while he was excise commissioner was contrary to public policy, and should not be recognized or enforced by the courts. No such defense, however, is pleaded in the answer. Besides, there is nothing on the

face of the petition which seems to indicate any other than a valid implied contract between the plaintiff and defendant; and, under such circumstances, if the contract sued upon is sought to be invalidated because of some extraneous matter, it should be pleaded in order that an issue may be raised at the trial which may be considered on appeal. [St. Louis Agriculture & Mech. Assn. v. Delano, 108 Mo. 217; Sybert v. Jones, 19 Mo. 86; Moore v. Ringo, 82 Mo. 468; Musser v. Adler, 86 Mo. 445.] In the case last cited it is said: "This defense [that services rendered were contrary to public policy] so far as pleading is concerned, is not unlike that of champerty, gaming, usury, and the like. It is an affirmative defense, and should be clearly and distinctly stated." The same rule is announced in the case of McDearmott v. Sedgwick, 140 Mo. 172, in which Sprague v. Rooney, 104 Mo. 360, which holds to the contrary, is overruled.

For these considerations the judgment is reversed and the cause remanded. All concur.