JOHN TATTERSON *vs.* SUFFOLK MANUFACTURING COMPANY.

A hiring of personal service for which payment is made quarterly is not necessarily a hiring by the quarter or terminable by a quarter's notice.

The refusal of a judge to rule on the legal effect of part only of the evidence from which the terms of a contract are to be deduced affords no ground of exception.

A. and B. agreed orally that B. should hire his services to A. at a yearly rate. B. served a year, and began the second year without a new bargain. *Held,* in an action by B. for his wages during the second year, that the original negotiations between the parties were competent evidence to show the terms of the contract, express or implied, under which the parties continued their relation; and that the statute of frauds was no bar to the action.

CONTRACT. The declaration alleged that the defendants hired the plaintiff as their superintendent by the year, and, having employed and paid him for a year and three quarters of a second year, refused to employ or pay him for the last quarter of this year. The answer denied that the plaintiff was employed by the year, and alleged that he was employed by the quarter, was paid for all the quarters for which he was employed, and was discharged after due notice ; and it also set up the statute of frauds.

At the trial in the superior court, before *Rockwell,* J., there was evidence that the plaintiff applied to the defendants to be employed as their superintendent, and offered to come at $2000 per year and house rent ; that this offer was made to John Wright, the defendants' agent, who replied that he should have to consult Walter Hastings, their treasurer ; and that on January 22, 1866, Wright wrote to the plaintiff : " After consulting with Mr. Hastings, I have concluded to accept your terms so far as relates to compensation in cash, and to furnish you one of the houses I showed you, in addition to the $2000 per annum, provided the dwelling is satisfactory," and the plaintiff replied by a letter stating that he could probably commence his engagemen the 1st or 5th of February 1866.

There was evidence tending to show that the plaintiff entered into the employment of the defendants about February 1, 1866, and on April 28, 1866, he gave a receipt for $500 " in payment for personal services, for quarter ending April 28, 1866 ; " that,

at the end of the first year, he entered upon the second without any new bargain made ; that he continued in the employment of the defendants three quarters of the second year, and was ready and offered his services for the last quarter of that year; that in June 1867, the defendants, being unsuccessful in their business, determined to work up their surplus stock and stop their mills; that the plaintiff on July 1, 1867, was notified by Hastings that his services would not be wanted after three or four months, and he had better look for employment, as the mills would be stopped; that the mills did stop in October 1867, and the plaintiff performed no further service for the defendants ; and that the plaintiff gave to the defendants seven quarterly receipts for $500 each ; the last one " for the quarter ending October 26, 1867." It was agreed that the contract was oral.

The defendants requested the judge to instruct the jury: " 1. That the proposition on the part of the plaintiff ' to come at $2000 per year, and house rent,' as testified to by him in his proposition to Wright, and the reply of Wright in his letter of January 22, 1866, did not constitute a contract in law of hiring for a year.   2. That the proposition of the plaintiff and the answer of Wright did not either express or imply a contract for a year, but simply a hiring at a stipulated rate of compensation. 3. That the fact that the plaintiff received his compensation quarterly, and gave receipts in full for personal services ending at the termination of the several quarters, determined the contract of hiring, and the plaintiff was not entitled to more than three months' notice.   4. That, if the jury were satisfied that the plaintiff was notified July 1, 1867, that the mills would stop in October and all the employees be discharged, and that notice was three months prior to October 26, 1867, the date of the last receipt, then the plaintiff was not entitled to recover the last quarter sued for.   5. That, if the contract was for one or two years, at $2000 per year and house rent, not in writing, and not to be performed within the year, and no money paid or goods delivered to bind the bargain, the contract could not be enforced, as it was within the statute of frauds."

The judge declined to so instruct the jury, and did instruct them as follows: "The theory of the plaintiff is, that the con-tract with Wright, the agent of the defendants, was a hiring by the year, and that, having entered upon the second year, and been paid for the first quarter of the second year, he was entitled to serve for that second year and have pay for all the quarters of that year; that he served the defendants three quarters and re-ceived pay at the end of each quarter; that he remained there according to his contract during the fourth and last quarter, ready to serve; and that he is entitled to recover for that quarter for which he has not been paid. The jury, upon the consideration of the verbal and written evidence, including the facts relating to his actual service and pay, will determine whether this was the contract, and if the plaintiff has satisfied the jury, upon the whole evidence, that this theory is the true one, the plaintiff may recover, notwithstanding the notice in July, should the jury find such notice to be proved. The theory of the defendants on the contrary is, that the contract was a hiring not by the year, but for periods of three months, so long as the defendants wished to employ him; and that, the defendants having in July given notice that his services would not be wanted after the end of the quarter ending November 1, the plaintiff cannot recover for the fourth quarter, commencing November 1; and if this theory is correct, he cannot recover. If the jury are satisfied that the contract was according to the plaintiff's theory, and that the let-ter of Wright was connected with, and part of the contract, the statute of frauds does not apply to the case."

The jury returned a verdict for the plaintiff, and the defend-ants alleged exceptions.

*A. R. Brown,* (*E. A. Alger* with him,) for the defendants. The hiring was not by the year. The quarterly receipt of pay-ments made the hiring quarterly, and the plaintiff received a quarter's notice. If the hiring was for a year, the contract, which it is admitted was oral, was within the statute of frauds.

*D. Saunders & C. G. Saunders,* for the plaintiff.

WELLS, J. The correspondence forms only a part of the evi-dence by which the contract of the parties was proved. There

was no express stipulation, either written or oral, which fixed the time for the continuance of the employment of the plaintiff by the defendant. That element of their contract depended upon the understanding and intent of the parties; which could be ascertained only by inference from their written and oral negotiations, the usages of the business, the situation of the parties, the nature of the employment, and all the circumstances of the case. It was an inference of fact, to be drawn only by the jury. The whole question, What was the contract existing between the parties, at the time the defendants undertook to terminate the employment? was properly submitted to the jury.

The plaintiff insisted that it was a contract by the year. The defendants insisted that it was a contract by the quarter; and therefore that it might be terminated at the end of any quarter during the year, upon suitable notice. The court below stated the two propositions to the jury; ruling, upon this point, only that, if they found the contract to be as the plaintiff claimed, he might recover notwithstanding such notice.

This ruling would be at least questionable, if the fact involved in it, in regard to the terms of the contract, had been controverted. A contract of hiring by the year might be terminable within the year, upon notice by one of the parties to the other; if that condition was inferable, as a part of the contract, from their negotiations, or from usage known to them and understood to be applicable to such engagements. But the defendants did not allege in the answer, nor attempt to maintain at the trial, any proposition of that kind, to qualify the contract alleged and relied on by the plaintiff. The defence consisted in the denial of any contract by the year, and the assertion of a contract by the quarter. The attention of the judge was not called to the question of the right to terminate the contract in the aspect above suggested; and we do not think the defendants are now entitled to take advantage of that oversight.

The third and fourth prayers for instructions relate to the point of termination by notice. But they do not ask the court to rule upon the question whether such a right might be engrafted upon a contract for a year, if the jury should find such to have been the understanding and intent of the parties.

The obvious aim of these prayers was to obtain a ruling that, as matter of law, an employment like that of the plaintiff, with quarterly payments, might be terminated by three months' notice; especially under the circumstances of that case, which required a cessation of the business in which he was engaged. They sought, apparently, to import into such engagements a rule of law analogous to that which applies to tenancies of real estate by oral agreement; or to that which governs contracts for domestic service in England. But we are aware of no such rule of law applicable to the case. We are satisfied that these instructions were rightly refused.

The first and second prayers were rightly refused, for the reason that they called upon the court to rule upon the legal effect of a part only of the whole evidence from which the contract was to be deduced. That legal effect was dependent upon the other facts and circumstances in proof; and such a ruling would have been not only useless, but improper. It was for the jury to ascertain what the real contract was.

The fifth prayer relates to the statute of frauds. The position of the defendants would be correct, if the plaintiff relied upon the original negotiations as the contract upon which his action was founded. The written evidence does not show any contract which binds the defendants to employ the plaintiff for the whole of a second year. That obligation, if it exists, must be found in some agreement into which the parties had entered within the year. They did enter into some agreement, by the mere fact of continuing their relations of employment and service. It was a relation of contract. The terms of the contract, in the absence of express words, are to be ascertained, not alone by what occurred within the year, but also from all that had transpired previously. From all the evidence the jury must determine, as an inference of fact, what was the understanding with which the parties entered upon the second year of employment and service. That, when found, constitutes their contract. The contract which resulted from the original negotiations did not by its terms, and could not by reason of the statute, extend into the second year But those negotiations were competent evidence from which to

infer what were the terms of the new contract under which the parties continued their relations. We think that the jury were rightly instructed that the statute of frauds did not apply to the contract upon which the plaintiff relied ; and that the fifth prayer was rightly refused. *Exceptions overruled.*