## Richmond.

### GOLDSMITH & CO. v. LATZ.

#### FEBRUARY 2, 1899.

Absent, Buchanan and Cardwell, JJ.

1. CONTRACT OF SERVICE—*Case in Judgment—Construction.*—The proper construction of the contract in suit is that, while the time of service was from April to April, the time of profit sharing was from January to January. The term of service began in April, but in January following the defendant was to share in the profits of the preceding twelve months in such proportion as the term of service bore to the whole year.

2. MASTER AND SERVANT—*Contract of Service—Termination of Contracts—Instructions—Evidence to Support.*—Whether an employee was discharged by his employer or voluntarily abandoned the service without sufficient cause is a question of fact for the jury. If there is evidence tending to establish either view, and an instruction is asked which correctly propounds the law on such view, it is error to refuse it.

3. MASTER AND SERVANT—*Wages—Interest.*—If an employee is to receive a share of the profits annually in lieu of wages, and his share of the profits is retained by the employer after the end of the year, he is entitled to interest thereon from the end of the year.

4. ACCOUNT RENDERED—*Acquiescence—Presumption of Correctness—Burden of Proving Errors.*—Unexplained acquiscence for more than a year in the correctness of an account rendered raises a presumption that the account is correct, and throws the burden of proving errors on the party denying its correctness.

Error to a judgment of the Corporation Court of the city of Danville rendered October 11, 1897, in an action of covenant wherein the defendant in error was the plaintiff, and the plaintiffs in error were the defendants.

*Reversed.*

The contract upon which this action was founded, and the letter thereto attached, are in the words and figures following, to-wit:

"This agreement, entered into and concluded this 14th day of April, 1894, by and between Joseph Goldsmith and Henry J. Goldsmith, both of the city of Baltimore, State of Maryland, copartners, trading as J. Goldsmith & Co., in the city of Danville, State of Virginia, parties of the first part, and George Latz, also of the city of Baltimore, State of Maryland, party of the second part—witnesseth: That for and inconsideration of the sum of one dollar in hand paid, the receipt whereof is hereby acknowledged, and the further consideration herein named, parties of the first part *doth* covenant and agree to engage and employ the said party of the second part, as manager for their store in Danville, State of Virginia, upon the following terms and conditions, to-wit:

1. The said party of the second part shall reside in said city of Danville during the existence of this contract, and shall give and devote his undivided and strict personal attention to all matters whatsoever relating to the conduct of said business, to the end that the result of such management may be for the best interest of all parties concerned.

2. In consideration of such services being rendered by the said party of the second part, the said George Latz is to receive as a compensation therefor a sum equal and equivalent to one third part of the net profits of said business for the year ending January 15, 1895, as shown by the books of said J. Goldsmith & Co., in such ratio and proportion as the time of such services rendered by said Latz may bear to the whole fiscal year begining January 15, 1894, and ending January 15, 1895, and said Latz shall have the privilege of drawing a sum not exceeding nine hundred dollars ($900) per year, and the sum so drawn shall be charged to said Latz's individual account, and deducted from his share of net profits of said business.

3. As a further consideration for such services as may be

rendered by said Latz, he shall be entitled to receive an additional sum of fifty dollars ($50) per month, the said amount so drawn to be divided and charged equally to the personal accounts of Joseph Goldsmith and Henry J. Goldsmith aforesaid.

4. It is distinctly understood by and between the parties hereto, that all notes, bonds, and contracts and obligations relating to said business shall be signed and executed, and all payments and settlements made only by the parties of the first part, who shall also make all the purchases of goods, wares, and merchandise which may be needed for the conducting of said business, except only where permission is given and delegated by them to said Latz so to do.

5. The said Latz agrees that he will from time to time, as occasion may require, consult and advise with said Goldsmiths regarding the policy of management of said business, and will abide by such decision, advice, and instructions as they may from time to time give, regarding any matter whatsoever relating to said business.

6. The employment of the help necessary for the proper conducting of the business, as well as all matters relating to their compensation, shall be done with and by the consent and advice of said Goldsmiths.

7. This contract is for the period of one year, beginning from April 16, 1894, and ending April 16, 1895, and shall continue in force upon the same terms and conditions for like successive periods of one year from the first term hereby created or until abrogated by either one of the parties hereto, in which event, a written notice shall be given of not less than sixty days in advance of the expiration of any such period; and when so abrogated, then and in that event, the compensation of said Latz from the time intervening between January 15th next previous thereto, and the termination of this contract, shall be the sum equal in amount per month to the average amount received per month under the provisions of this con-

tract for the year, or twelve months previous to, and ending on January 15th next prior to the abrogation of this contract.

Witness our hands and seals, this fourteenth day of April, 1894.

J. GOLDSMITH,    [Seal.]
H. J. GOLDSMITH, [Seal.]
GEORGE LATZ,    [Seal.]

Witness: As to J. Goldsmith and George Latz, J. J. Rives; as to H. J. Goldsmith."

The following letter is attached to the foregoing agreement, to-wit:

"BALTIMORE, April 10, 1894.
Mr. J. GOLDSMITH:

Dear Friend,—Upon second consideration I don't think it advisable to take stock at this season of the year, as it will affect trade.

Yours respectfully,

GEORGE LATZ."

*Green & Miller* and *Withers & Green,* for the plaintiffs in error.

*Peatross & Harris* and *N. H. Massie,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

The court is of opinion that the proper construction of the contract in writing between the parties to this controversy is that Latz, the defendant in error, was to serve Goldsmith & Co., the plaintiffs in error, as manager of their mercantile establishment in Danville, Va., for one year, beginning April 16, 1894, and ending April 16, 1895, and that the contract should continue in force upon the same terms and conditions for like successive periods of one year from the first term until abrogated by one of the parties, in which event a written

notice should be given not less than sixty days in advance of the period at which it was proposed to terminate the contract; that for his services, as manager, Latz was to receive $50 per month, to be charged in equal proportions to the individual accounts of Joseph and Henry Goldsmith, and was to receive, as additional compensation, one third part of the net profits of the business for the year ending January 15, 1895, as shown by the books of Goldsmith & Co., in such ratio and proportion as the time of such services rendered by said Latz bore to the whole fiscal year beginning January 15, 1894, and ending January 15, 1895, with the privilege to said Latz of drawing on account of his interest in the profits a sum not exceeding $900 per annum.

The 15th of January was the time for taking the stock and ascertaining the net profits of the business for the preceding year. This could not be done in April without detriment to the business, as shown by the letter of Latz to Goldsmith & Co. written before the contract was made, and attached thereto. The contract was made in April. It was, however, clearly contemplated thereby that the net profits were to be ascertained as of the 15th of January, 1895, and the interest of Latz ascertained therein for the nine months then ending; and that thereafter his annual compensation was to be ascertained on the 15th of January in each year. Hence the provision in the second clause of the contract that on the 15th of January, 1895, nine months after the contract was entered into, Latz should receive one third part of the net profits for the year ending January 15, 1895, in such ratio and proportion as the time of such services rendered might bear to the whole fiscal year beginning January 15, 1894, and ending January 15, 1895. A further provision of the contract is that in case it is abrogated by either party, the compensation of Latz, for the time intervening between January 15 next previous thereto and the termination of the contract, shall be a sum equal in amount per month to the average amount received per month for the previous year ending January 15 next prior to the abroga-

tion of the contract; thus showing that the period of profit sharing was from January to January of each year. This view is still further confirmed by the construction the parties have themselves put upon the contract. In March, 1895, Goldsmith & Co. enclosed to Latz, in a letter written from Baltimore, a full statement of the business for the year ending January 15, 1895, in which they say : " You will note that your part of the earnings amount to $2,149.82 for the nine months which you have been engaged in the business, which would indicate an average of $2,687.28 *per annum.*" In the statement rendered, the balance is struck, showing the amount due Latz for his nine months' servive to be :

Interest in profits . . . . . . . . . . . . . $1,699 82
Nine months' salary at $50 . . . . . . . .   450 00

Earnings of Geo. Latz for nine months . . $2,149 82.

The words quoted from the letter, " which would indicate an average of $2,687.28 *per annum,*" were not intended as a statement that the sum named would be his compensation for the twelve months' service ending in April, 1895, but were merely intended, as stated, to indicate that upon the basis of $2,149.82 for nine months, at a like ratio of profits his compensation would be $2,687.28 for twelve months. (It is agreed that the figures $2,687.28 should have been $2,866.42.) This letter and statement, which were received by Latz, and not objected to, clearly show that, while his term of service was from April to April of each year, his term of profit sharing was from January to January of each year. This is the most reasonable construction of the contract, and does no injustice to either party thereto.

The court is further of opinion that it was error to give the first instruction asked for by the plaintiff in the court below. That instruction excludes from the jury all consideration of the question whether Latz was discharged by Goldsmith & Co., or voluntarily, and in violation of his contract, left their service. There was evidence tending to show that he voluntarily aban-

doned their service without cause.    This was a question of fact
that should have been submitted to the jury for their determi-
nation.

There is no error in the second instruction given for the
plaintiff.    Latz was entitled to have interest from January 15,
the end of each current year, upon any balance then due him
until paid.    He was not a partner in the concern, but an em-
ployee whose compensation was measured by a share in the
profits on the amount of business he succeeded in doing each
year, and if his compensation remained in the hands of his
employers after it was due he was entitled to interest thereon.

The court is further of opinion that it was error to refuse the
fourth instruction asked for by the defendants in the court
below.    That instruction tells the jury that if they believe from
the evidence that the plaintiff received from the defendants a
statement of the account between them, showing the exact
amount of compensation for his services in the year beginning
in January, 1894, and ending in January, 1895, and accepted
the same without complaint or objection, and thereafter con-
tinued for more than a year in the employment of the defend-
ants, without objection or complaint of the amount of profits
awarded him in the statement, such conduct, without explana-
tion satisfactory to the jury, on the part of Latz, raises a strong
presumption that he had agreed to the correctness of such set-
tlement, and, unless the jury should believe that such presump-
tion was rebutted by Latz, they should find for the defendants
on that question.    This instruction was based upon the letter
of March, 1895, and the statement therein, already adverted
to, and other evidence in the cause, and was a correct statement
of the law, if the jury should believe the facts upon which it
was predicated, and ought to have been given.

For these reasons, the judgment complained of must be
reversed, the verdict of the jury set aside, and the cause
remanded for a new trial, in accordance with the views herein
expressed.

*Reversed.*