𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## CONRAD V. ELLISON-HARVEY CO.

### March 15, 1917.

1. MASTER AND SERVANT—*Discharge—Question of Law or Fact.*—In an action of assumpsit by a servant against his master to recover on account of his salary for the balance of the year upon ·a wrongful discharge, where the evidence tended to show that the master had secretly determined to drop the servant, and in effect had done so, the question whether he was discharged or quit of his own accord, is one for the jury to answer.

2. APPEAL AND ERROR—*Point not Raised in Lower Court.*—It was urged by the defendant, that as the action was based upon a wrongful discharge, the plaintiff should have declared specially upon the contract and its breach, whereas his declaration contained only the common counts in assumpsit; and, that, therefore, his action must fail.

   *Held:* That as this point was not made in the lower court, it could not be successfully raised for the first time in the appellate court.

3. MASTER AND SERVANT—*Evidence.*—In an action by an employee against his employer for wrongful discharge, the original contract of hiring made several years before was admissible for the purpose of showing the terms of the original hiring.

4. APPEAL AND ERROR—*Exceptions and Objections.*—Parties are not permitted to make one objection to evidence in the trial court and another and different one in the appellate court, but are regarded as having waived all objections save those specifically pointed out.

5. DECLARATION—*Amendment.*—It was urged by the defendant, that as the action was based upon a wrongful discharge, the plaintiff should have declared specially upon the contract and its breach, whereas his declaration contained only the common counts in assumpsit. Conceding that the declaration was defective, it was the duty of the defendant, if it intended to rely upon that point, to then and there call the court's attention to it. Section 3384 of the Code of 1904, authorizing amendments, upon terms fair to both parties, whenever a variance between the pleadings and the proof develops during the trial, was expressly designed to meet just such a situation as would

have been presented in the trial court if the question first raised on appeal had been raised there. This statute has always, and most properly, been regarded with favor, and construed with liberality by the courts of this State; and its terms would have fully met the condition complained of by defendant. Having failed to avail itself of the remedy thus provided, or to give the plaintiff or the court the opportunity to invoke it, the defendant can not upon appeal take advantage of the irregularity which the statute would have cured.

6. MASTER AND SERVANT—*Assumpsit.*—Upon a wrongful discharge of a servant his appropriate remedy is assumpsit.

7. MASTER AND SERVANT—*Term of Employment.*—Plaintiff was originally hired for a fixed term of one year. He held over for several succeeding years without any new agreement. The only change ever made was one increase of salary.

    *Held:* That the question of whether he was employed at the time of his discharge by the month or by the year was for the jury.

8. MASTER AND SERVANT—*Term of Employment—Construction of Contract of Employment.*—The plaintiff was entitled to show, for whatever they were worth, the circumstances and negotiations under which he began his original term of service, so that they might be considered along with the original contract itself in determining the probable intention of the parties in continuing the relationship after the first year had expired. After the end of each year, the employment continued, some sort of contract was necessarily implied, and the question of what this implied contract was depended upon the intention of the parties. In ascertaining this intention, it was proper for the jury to have before them the original contract and the circumstances under which it was made.

9. MASTER AND SERVANT—*Duration of Term of Employment.*—The English rule is that every general hiring is presumed to be for one year, in the absence of stipulations or circumstances to rebut the presumption. In the United States the prevailing doctrine is that every such general hiring is terminable at the will of the parties. Both in England and in this country, however, when one enters the employment of another for a definite period (of one year or less) and continues in that employment after the expiration of that period without any new agreement, the presumption, rebuttable of course by evidence, is that he is again employed for a like term.

10. MASTER AND SERVANT—*Contract of Employment—Statute of Frauds.*—A servant was employed under a written contract for one year, beginning on January 1st, and afterwards continued in his employment from year to year without any other contract in writing, until his discharge on June 30, 1914.

*Held:* That his contract for 1914 was based upon implication and presumption drawn in part from previous dealings between the parties, but it was nevertheless a new contract, not made until the year 1914 began, and to be performed within that year. In other words, it was the ordinary case of a contract for one year's service, to begin and be performed within the year, and consequently not within the statute of frauds.

Error from a judgment of the Law and Equity Court of the city of Richmond, in an action of assumpsit. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*J. C. Page,* for the plaintiff in error.

*Jo Lane & Cary Ellis Stern,* for the defendant in error.

KELLY, J., delivered the opinion of the court.

L. A. Conrad, claiming to have been employed as a bookkeeper by the Ellison-Harvey Company, a corporation, for a period of one year from January 1, 1914, and to have been unlawfully discharged on June 30, 1914, brought this action of assumpsit to recover on account of his salary for the balance of the year. There was a verdict and judgment against him, and thereupon he obtained this writ of error.

Conrad's original employment with the Ellison-Harvey Company began on January 1, 1910, under a written contract which fixed his compensation at $100 per month and his term of service at one year. When the year expired, he continued in the same employment without anything being said as to a new arrangement. In May, 1911, the company, upon a recommendation made by Mr. Harvey at a meeting of the directors, increased Conrad's salary to $125 per month. So far as the record discloses, this increase was

not intended to have, or regarded as having, any effect upon the term of his employment.   He remained in the service of the company throughout the years 1911, 1912, 1913 and until June 30, 1914, when, as he alleges, he was discharged.

The assignments of error relate exclusively to the action of the trial court upon the instructions to the jury, which necessarily resulted in a verdict for the defendant.   Before taking up these assignments, however, it will be in order, and will facilitate and clarify the discussion of the assignments themselves, to dispose of certain contentions of the defendant which, if sound, would defeat the plaintiff's action entirely, and make it necessary for us to affirm the judgment on the ground that no other verdict could have been properly returned, regardless of the instructions.

The first of these contentions is that the plaintiff was not in fact discharged, but quit the service of his own accord.   Of this it is sufficient to say, that while the evidence is by no means clear upon the question, it was, in our opinion, one for the jury to determine.   The defendants would not deal frankly with him, were moving their principal effects and main place of business out of the State, appeared to have no further position or use for him, and would give him no assurance whatever as to his future employment. Without discussing it in detail, the evidence seems to us, when viewed as a whole, to have tended to show that the company had secretly determined to drop him, and in effect had done so, before he instituted this suit and attached their estate to secure his claim.   In this state of the evidence, the question whether he was discharged, or quit, was one for the jury to answer.   (*Goldsmith* v. *Latz*, 96 Va. 680, 685, 32 S. E. 483.)

It is urged by the defendant, in the second place, that, as this is an action based upon a wrongful discharge, the plaintiff should have declared specially upon the contract and its breach, whereas his declaration contains only the

common counts in assumpsit, and that, therefore, his action must fail. This point was not made in the lower court and cannot be successfully raised for the first time here. It is true that when the plaintiff offered in evidence the written contract covering the original employment for the year 1910, the defendant objected, but the objection was not upon any such ground as is here suggested. The objection, and the sole objection indicated, was that the written contract "is not the contract in force in 1914," and that the plaintiff should "be confined to proving the contract under which he is claiming." The contract for 1910 was clearly admissible for the purpose of showing the terms of the original hiring. (26 Cyc. 976, note; 20 A. & E. Encyc., 2d ed., 16, note; *Herman* v. *Littlefield,* 109 Cal. 430, 42 Pac. 443; *Tatterson* v. *Suffolk Mfg. Co.,* 106 Mass. 56; other authorities cited *infra.*) At no time during the progress of the trial was there, so far as the record shows, any intimation that the defendant relied upon a variance between the declaration and the proof, or upon the insufficiency or inaptness of the evidence to sustain a recovery upon the common counts. Parties are not permitted to make one objection to evidence in the trial court and another and different one in the appellate court, but are regarded as having waived all objections save those specifically pointed out. *Warren* v. *Warren,* 93 Va. 73, 74-6, 24 S. E. 913; *McCrorey* v. *Thomas,* 109 Va. 373, 376, 63 S. E. 1011, 17 Ann. Cas. 373.

In *Warren* v. *Warren, supra,* Judge Buchanan, speaking for this court, said: "The parties must stand or fall by the case as made in that (the trial) court. An appellate court is not a forum in which to make a new case. It is merely a court of review to determine whether or not the rulings and judgment of the court below upon the case as made there were correct. Any other rule, it has been well said, would overturn all just conceptions of appellate procedure in cases at law, and would result in making an appeal in such action

a trial *de novo,* without the presence of witnesses, or the means of correcting errors and omissions."

Furthermore, and perhaps more directly to the point in this connection, the action of assumpsit was the appropriate remedy, if the plaintiff was entitled to recover upon the facts as proved, and, conceding that the declaration was defective, it was the duty of the defendant, if it intended to rely upon that point, to then and there call the court's attention to it. Section 3384 of the Code of Virginia, authorizing amendments, upon terms fair to both parties, whenever a variance between the pleadings and the proof develops during the trial, was expressly designed to meet just such a situation as would have been presented in the trial court if the question now made before us had been raised there. This statute has always, and most properly, been regarded with favor, and construed with liberality by the courts of this State; and its terms would have fully met the condition now complained of by defendant. Having failed to avail itself of the remedy thus provided, or to give the plaintiff or the court the opportunity to invoke it, the defendant cannot now take advantage of the irregularity which the statute would have cured. This conclusion is in accord with the well settled policy and repeated decisions of this court. *Eagles* v. *Hook,* 22 Gratt. (63 Va.) 510, 512; *Langhorne* v. *Richmond City,* 91 Va. 364, 367, 22 S. E. 357; *Bertha Mineral Co.* v. *Martin,* 93 Va. 791, 801, 22 S. E. 869, 70 L. R. A. 999; *Moore Lime Co.* v. *Johnson,* 103 Va. 84, 86, 48 S. E. 557; *Va. & S. W. Ry. Co.* v. *Bailey,* 103 Va. 205, 228, 49 S. E. 33; *Newport News &c. R. Co.* v. *McCormick,* 106 Va. 517, 518, 56 S. E. 281; *N. & W. Ry. Co.* v. *Perdue,* 117 Va. 111, 117, 83 S. E. 1058; *Hawkins & Buford* v. *Edwards,* 117 Va. 311, 317, 84 S. E. 654; Burks Pl. & Pr., pp. 585-6-7; *Id.* p. 770.

Another contention of the defendant, urged as conclusive against the plaintiff's demand, is that he was employed

in 1914 by the month and not by the year, and that therefore any action by him based upon a yearly contract must fail. In our view of the evidence, the question thus presented, to say the most that can be said of it for the defendant, was one for the jury to settle. The evidence certainly tended to show, if it did not conclusively show, that the plaintiff, having been originally hired for a fixed term of one year, held over in the succeeding years of 1911, 1912, 1913 and 1914, without any new agreement or different understanding as to the term of service. The only change ever made was the increase of salary in May, 1911, already pointed out. Nothing whatever appears in the record to explain the occasion or purpose of this increase, except the uncontradicted statement of Conrad that, in the course of the original negotiations with representatives of the defendant, he was hesitating about accepting their offer of $100 per month, and called their attention to the fact that he then held an equally remunerative positon which he could keep as long as he chose, whereupon Mr. Ellison, the president of the company, said: "Well, come on with us and we will give you one hundred dollars a month now, and later on will increase you." This statement was objected to at the trial solely on the ground that Mr. Ellison was then dead, but when it was made to appear that Mr. Harvey also was present during the conversation, the objection was not further urged. The statement does not appear to us to be very material in any aspect of the case. If it be left out of view entirely, the mere unexplained increase in salary would not in itself be sufficient to show any intent to convert into a monthly employment one which had commenced under a yearly contract. But the plaintiff was entitled to show, for whatever they were worth, the circumstances and negotiations under which he began his original term of service, so that they might be considered along with the original contract itself in determining the probable inten-

tion of the parties continuing the relationship after the first year had expired. The contract for the year 1911, or for any succeeding year, did not exist, and is not claimed to have existed, until the preceding year had expired; but when, after the end of each year, the employment continued some sort of contract was necessarily implied, and the question of what this implied contract was depended upon the intention of the parties. In ascertaining this intention, it was proper for the jury to have before them the original contract and the circumstances under which it was made. It is to be remembered in this connection that the defendant, not the plaintiff, was relying upon the increase of salary, invoking that fact to sustain its contention that the hiring after 1910 was by the month; and, in this aspect, the case became peculiarly one for the application of the general rule permitting evidence of previous dealings and negotiations.

In *Tatterson* v. *Suffolk Mfg Co.* (Mass.), *supra,* the court used the following language, which is especially pertinent here: "There was no express stipulation, either written or oral, which fixed the time for the continuance of the employment of the plaintiff by the defendant. That element of their contract depended upon the understanding and intent of the parties: which could be ascertained only by inference from their written and oral negotiations, the usages of the business, the situation of the parties, the nature of the employment, and all the circumstances of the case. It was an inference of fact, to be drawn only by the jury. The whole question, What was the contract existing between the parties, at the time the defendants undertook to terminate the employment? was properly submitted to the jury."

In the case of *Chamberlain* v. *Stove Works,* 103 Mich. 124, 61 N. W. 532, the plaintiff had worked for the defendant company for some years at a yearly salary, and then, in January, 1886, he was elected a director and secre-

59

tary of the concern.    Thereafter he continued to render the same service as formerly, but at an increased salary. He was also re-elected as director and secretary each succeeding year until 1892, when another person was chosen in his place.    In May, 1892, he was discharged from the company's employment, and, in an action brought by him, the jury found that he was employed for a full year and that this employment continued distinct from his offices in the corporation.    It was held, on appeal, that the character of the hiring was properly left to the jury and that their determination was not improper.    See also Mechem on Agency (2d ed.) 602 and cases cited.

So, in the instant case, we find no difficulty in holding that, under the law and the evidence, the jury might very properly have found that the plaintiff had a contract by implication for the entire year 1914.    The evidence has already been sufficiently reviewed, and the law applicable to it is perfectly well settled.    The English rule is that every general hiring is presumed to be for one year, in the absence of stipulations or circumstances to rebut the presumption.    (1 Min. Inst., 4th ed., p. 209; 26 Cyc. 973.) In the United States the prevailing doctrine is that every such general hiring is terminable at the will of the parties (Lile's Notes on 1 Min. Inst., p. 54; 20 A. & E. Enc., 2d ed., p. 14; 26 Cyc. 874.)    Both in England and in this country, however, when one enters the employment of another for a definite period (of one year or less) and continues in that employment after the expiration of that period without any new agreement, the presumption, rebuttable of course by evidence, is that he is again employed for a like term.

"A person who has been previously employed by the month, year or other fixed interval, and who is permitted without any new arrangement to continue in the employment after the period limited by the original employment has expired, will, in the absence of anything to show a con-

trary intention, be presumed to be employed until the close of the current interval and upon the same terms. This, however, is merely a presumption, and gives way before evidence that such a continuation was not intended." Mechem on Agency (2d ed.), sec. 605, p. 434. See also to the same effect, 20 Am. & Eng. Enc. (2d ed.), p. 16; 26 Cyc. p. 976; *McCullough Iron Co.* v. *Carpenter*, 67 Md. 554, 11 Atl. 176; *Wallace* v. *Floyd*, 29 Pa. 184, 772 Am. Dec. 620; *Tatterson* v. *Suffolk Mfg. Co., supra; Standard Oil Co.* v. *Gilbert*, 84 Ga. 714, 11 S. E. 491, 8 L. R. A. 410; *Kelly* v. *Carthage Wheel Co.*, 62 Ohio St. 598, 57 N. E. 984; *Douglass* v. *Merchants Ins. Co.*, 118 N. Y. 484, 23 N. E. 806, 7 L. R. A. 822.

In the *Gilbert Case,* cited above, the Supreme Court of Georgia, in the course of the opinion, said:

"In the argument notice was taken of the difference between the English and the American rule as to presuming that an indefinite hiring is for a whole year. It was said that in the former country this presumption holds, but in the latter it does not. Wood, Mast. and Serv., sec. 136.

"We think, however, this presumption has nothing to do with the matter; for whether the first hiring has its duration fixed by express or implied contract, if it be fixed in either way, the term (if not longer than one year) admits of duplication by tacit as well as express agreement. When we have a definite term of service, no matter how we get it, subsequent service of the same kind, where no new contract is made and nothing appears to indicate a change of intention, may be referred to the previous understanding, and to a tacit renewal of the engagement."

Summarizing the results of the foregoing discussion, we are of opinion, (1) that the objection to the form of the plaintiff's declaration comes too late to avail the defendant in this court; (2) that whether the plaintiff was discharged, or quit the service prematurely and of his own accord, and

(3) whether he was employed for the entire year 1914, or for a shorter period within that year, were questions upon which, under the evidence adduced, the plaintiff (to say the least of his rights upon the latter question) was entitled to a determination by the jury. And it follows further, therefore, that we cannot say, upon any of the anterior contentions of the defendant, that a verdict in its favor was necessarily proper as being the only one which could have been legally found.

This brings us to the plaintiff's assignments of error, which, in view of what has already been said, may be very briefly disposed of. They involve two rulings of the trial court, both of which were erroneous. The first was the refusal of the court to instruct the jury, at the instance of the plaintiff, "that when one enters into the service of another for a definite period, and continues in the employment after the expiration of that period, without any new agreement, the presumption is that the employment is continued on the terms of the original agreement, and this presumption must prevail, unless there be a new agreement shown, or at least facts which are sufficient to rebut the legal presumption and show that a different hiring was in fact intended by the parties."

This instruction contained a correct statement of the law as applicable to the case, and should have been given.

The second error complained of, and in our opinion well assigned, was the refusal of the court to give plaintiff's instruction number 1, and giving instead thereof instruction "A". Instruction No. 1, refused, was as follows:

"The court instructs the jury, that if they believe from the evidence and all the facts surrounding the contract between L. A. Conrad, and the Ellison-Harvey Co., that it was the intention of the parties to enter into a contract of employment by the year, and the said employment to commence at once, it was not necessary that the agreement

should be in writing, and if they further believe from the evidence that L. A. Conrad was discharged on the 1st day of July, 1914, they shall find for the plaintiff, and assess his damages at such amount as he would have received in wages for the remainder of his term, less the amount earned by him from other employment."

Instruction "A" was as follows:

"The court instructs the jury that they should disregard the oral testimony on the part of the plaintiff tending to prove the contract for a year's service with the defendant **covering the year 1914, for a breach** of which the plaintiff sues because the statutory law requires such a contract to be in writing, or to be proven by a memorandum or other writing signed by the party to be charged."

The contract which the plaintiff claimed and sought to prove was a contract for one year's service beginning on January 1, 1914. There was no contention that the agreement for that year was made prior to the day on which it began. The evidence, both oral and written, of the previous contract and relationship between the parties was introduced for the purpose of throwing light upon the intention of the parties during the subsequent year of 1914, and as such has already shown to have been proper, even though in that way it did tend to prove a contract which came into existence during a subsequent year. It was a contract based upon implication and presumption drawn in part from previous dealings between the parties, but it was nevertheless a new contract, not made until the year 1914 began, and to be performed within that year. In other words, it was the ordinary case of a contract for one year's service, to begin and be performed within the year, and consequently not within the statute of frauds, or parol agreements. 3 Min. Inst. (2d ed.) 197; 1 Chitty on Contracts (11th Am. ed.) p. 101; 20 Am. & Eng. Enc. L. (2d ed.) 48, and cases cited in note 1.

"The position of the defendants would be correct, if the plaintiff relied upon the original negotiations as the contract upon which his action was founded. The written evidence does not show any contract which binds the defendants to employ the plaintiff for the whole of a second year. That obligation, if it exists, must be found in some agreement into which the parties had entered within the year. They did enter into some agreement, by the mere fact of continuing their relations of employment and service. It was a relation of contract. The terms of the contract, in the absence of express words, are to be ascertained, not alone by what occurred within the year, but also from all that had transpired previously. From all the evidence the jury must determine, as an inference of fact, what was the understanding with which the parties entered upon the second year of employment and service. That, when found, constitutes their contract. The contract which resulted from the original negotiations did not by its terms, and could not by reason of the statute, extend into the second year. But those negotiations were competent evidence from which to infer what were the terms of the new contract under which the parties continued their relations. We think that the jury were rightly instructed that the statute of frauds did not apply to the contract upon which the plaintiff relied; * * *." *Tatterson* v *Suffolk Mfg. Co., supra.*

The judgment complained of will be reversed, the verdict of the jury set aside, and the cause remanded for a new trial to be had in conformity to the views expressed in this opinion.

*Reversed.*