# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## D. BUCHANAN AND SON V. HARRY EWELL.

September 29, 1927.

Absent, Christian, J.

1. MASTER AND SERVANT—*Action by Servant for Wrongful Discharge—Contention of Master that Servant Left of His own Accord—Question for Jury—Case at Bar.*—The instant case was an action by a servant against his master for wrongful discharge. The master asserted that plaintiff was not discharged but quit of his own accord. It appeared in the evidence that after a disagreement the master ordered the servant to take his hat and get out of the store. The servant took his hat and walked out. The master insisted that he did not mean to permanently discharge the servant. On the day of that alleged discharge and on the next day the master and servant met twice and the master said nothing about the servant's coming back to work. Several days later the master directed one of his employees to get the keys to the store door from the servant. There was some evidence tending to show that the master had become dissatisfied with the amount of the servant's sales.

 *Held:* That the question of whether the servant was discharged or voluntarily quit work was one for the determination of the jury, and that its finding in favor of the servant could not be disturbed.

2. MASTER AND SERVANT—*Discharge of Servant—Impertinence of Servant—Neglect of Duties by Servant—Case at Bar.*—The instant case was an action by a servant against his master for wrongful discharge. The master contended that the dismissal was justifiable on account of impertinent conduct towards his master and neglect of his duties by the servant. The master, as to the only instance of impertinent conduct relied on by him, was contradicted by the servant and another witness who was present. Aside from the servant's denial or explanation of alleged neglect of duties, the evidence failed to show that the master suffered any loss of business on account of these alleged delinquencies. All the evidence introduced, both pro and con, in reference to the servant's conduct to his employer and his alleged neglect of duty, was before the jury.

 *Held:* That the question of whether the servant's discharge was justifiable was properly left by the court to the decision of the jury.

3. Master and Servant—*Justifiable Discharge—Questions of Law and Fact.*—As a general rule the question of justification for the dismissal of a servant by the master is for the jury. It is only where the facts are clear and undisputed that it becomes a question for the court.

4. Master and Servant—*Action for Wrongful Discharge of Servant— Whether Employment was by the Year or for an Indefinite Period—Case at Bar.*—The instant case was an action by a servant against his master for wrongful discharge. In 1922 the master agreed orally to pay $200.00 per month and, in lieu of commissions, a bonus of $1,200.00 at the end of the year. Under this contract the plaintiff worked in the year 1923, and again in 1924, except for a voluntary increase in his rate of monthly pay to $250.00. This agreement existed between the parties during the year 1925 until plaintiff's discharge. The existence of this agreement was recognized in writing by the employer in 1925, before plaintiff's discharge.

   *Held:* That the jury were justified in finding that the contract between the parties was a yearly contract of employment and not a contract for indefinite term of service, terminable at will.

5. Master and Servant — *Term of Employment—Employment for a Definite Period—Continuation in Employment after Expiration of that Period.*—When one enters the employment of another for a definite period (of one year or less) and continues in that employment after the expiration of that period without any new agreement, the presumption, rebuttable, of course, by evidence, is that he is again employed for a like period, and a mere increase in salary, though unexplained, is not sufficient to show any intent to convert into a monthly employment one which had commenced under a yearly contract.

6. Master and Servant—*Term of Employment—Question for Jury—Case at Bar.*—In the instant case, an action by a servant against his master for wrongful discharge, the parol evidence tended to show that there was an agreement between the master and servant that the servant's salary should be $3,000.00 per year, payable monthly, and an additional $1,200.00 at the end of the year in lieu of commissions. This agreement was recognized by the master in a memorandum given to the servant at his request. This writing was not intended to constitute an original contract, but merely a memorandum of a contract previously made and existing.

   *Held:* That, under the facts and cirsumstances of the case, the whole question of whether the contract was for a definite or indefinite period was for the jury, and that the memorandum, taken in connection with the parol evidence, was sufficient ground for the conclusion by the jury that the existing contract between the parties was for a term of one year.

7. Partnership—*Whether Agreement Constituted a Partnership or the*

*Relation of Master and Servant—Share of Profits—Case at Bar.*—In the instant case, an action for wrongful discharge by a servant against his master, the master, at the request of the servant, gave to the servant a written memorandum of the agreement between them, to the effect that the servant had "a drawing account of three thousand dollars per year and an additional twelve hundred dollars at the end of year for his share of the profits."

*Held:* That the agreement between the parties did not constitute them partners.

8. PARTNERSHIP—*Partnership or Relation of Master and Servant.*—Even where a contract shows that the employee is to receive a part of the profits as shown by the books at the end of the fiscal year as compensation for his services, he is not a partner. *A fortiori* he cannot be considered a partner when he is to receive, in part compensation, a definite sum at the end of the year as his share of the profits.

9. MASTER AND SERVANT—*Term of Employment—Statute of Frauds—Case at Bar.*—The instant case was an action by a servant against his master for wrongful discharge. From the evidence the jury would have been justified in finding that the parol agreement of employment between the parties was either expressly or impliedly renewed at the beginning of each succeeding calendar year after it was made up to and including the year of plaintiff's discharge; that plaintiff's term of employment at the time of his discharge was, therefore, for the definite period of one year.

*Held:* That such being the case, the contract existing between the parties at the time of plaintiff's discharge did not come within the statute of frauds proscribing a verbal contract which was not to be performed within a year.

10. MASTER AND SERVANT—*Action by Servant for Wrongful Discharge—Whether Action was Brought on Oral Contract or Written Memorandum—Case at Bar.*—The instant case was an action by a servant against his master for wrongful discharge. The master moved to exclude all parol evidence in relation to the contract between the parties on the ground that the action was brought on a written memorandum which failed to fulfill the requirements of the statute of frauds. From the notice of motion it appeared that plaintiff claimed under a verbal contract made both prior to the year 1925, when he was discharged, and also for the year 1925, and not upon a writing executed subsequently to the contract, signed by the master recognizing the contract and stating its terms.

*Held:* That the action was based on the verbal contract and not on the written memorandum, and while the writing was admissible to be considered by the jury along with other evidence for the purpose of proving the contract, it was unnecessary to discuss the question of whether the writing itself met the requirements of the statute of frauds.

11.  MASTER AND SERVABT—*Instructions—Statute of Frauds—Case at Bar.*—
     The instant case was an action by a servant against his master for
     wrongful discharge.  The servant relied on a verbal yearly con-
     tract of employment made some years before his discharge and
     renewed by implication each year thereafter.  There was sufficient
     evidence to warrant the jury in finding the existence of such a con-
     tract of employment.  The defendant asked for an instruction, one
     paragraph of which told the jury that if they believed that plain-
     tiff was employed by defendant for the year beginning January 1st,
     1925, and such contract was made before January 1st, 1925, then to
     entitle plaintiff to recover, the contract or some memorandum
     thereof must have been in writing signed by the defendant.

     *Held:*  That this paragraph of the instruction was properly stricken
     out for the reason that it was misleading, in that it involved the
     question of the statute of frauds which was not applicable to the
     oral contract relied on.

12.  MASTER AND SERVANT—*Instructions—Repetition—Taking Questions of
     Fact from the Jury—Case at Bar.*—In an action by a servant against
     his master for wrongful discharge, where under the evidence the
     questions of whether plaintiff was actually discharged, and whether
     the discharge was justifiable, were for the jury, instructions for the
     defendant were properly refused, where the propositions set forth
     were covered by other instructions given in defendant's behalf, and
     where the instructions undertook to take from the jury the questions
     of whether plaintiff was actually discharged, and whether the dis-
     charge was justifiable.

13.  MASTER AND SERVANT—*Wrongful Discharge—Bonus.*—In an action by a
     servant against his master for wrongful discharge, it appeared that
     under the terms of agreement between the parties the servant was
     to receive $1,200.00 as a bonus at the end of the year.  Defendant
     asked for an instruction that plaintiff could not recover this $1,200.00
     or any part thereof.

     *Held:*  That since it appeared that the purpose of the action was to
     recover damages for breach of the contract of employment, and that
     the trial of the case did not take place until after the term of service
     had expired, the instruction was rightly refused.

14.  MASTER AND SERVANT—*Wrongful Discharge—Damages—Time of Com-
     mencing Suit as Affecting Recovery.*—The wrongfully discharged
     employee may immediately bring his action against the employer,
     without waiting until the expiration of the time specified in the
     contract of service, whether he claims to recover for the value of
     the services rendered, or whether he demands damages for a breach
     of the contract.  According to what appears to be the prevailing
     view the measure of damages is the same in either case—in other
     words, full damages may be recovered if the action is instituted

without waiting until the expiration of the term—but there are
decisions suggesting a different rule, and the constructive service
doctrine permits successive actions in case the contract specifies
that wages or salary shall be paid in installments.

15.  MASTER AND SERVANT—*Wrongful Discharge—Damages—Time of Com-
mencing Suit as Affecting Recovery.*—Where the action is commenced
during the term contracted for, but the trial occurs after the expi-
ration of the term, the employee is entitled to recover the same
damages that he would have been entitled to recover had the action
been commenced after the expiration of the term.


Error to a judgment of the Circuit Court of the city
of Richmond, in a proceeding by motion for a judgment
for damages.   Judgment for plaintiff.   Defendant as-
signs error.

*Affirmed.*

The opinion states the case.

*Wyndham R. Meredith,* for the plaintiff in error.

*Christian & Lamb,* for the defendants in error.

CHINN, J., delivered the opinion of the court.

This suit was brought by Harry Ewell against
David A. Buchanan, trading as D. Buchanan and
Son, to recover damages for an alleged wrongful dis-
charge.   The trial of the case in the court below re-
sulted in a verdict and judgment for the plaintiff, and
thereupon the defendant obtained this writ of error.

The errors assigned relate, (1) to the refusal of the
court to set aside the verdict as contrary to the law and
the evidence; (2) to the admissibility of certain evi-
dence; and (3) to the action of the court in instructing
the jury.   The various assignments under the above
headings will be considered in their proper order.

[1] It is first contended that the verdict should have

been set aside because the evidence shows that the plaintiff was not discharged, but quit of his own accord.

It appears that at the time of his alleged discharge the plaintiff had been in the employment of the defendant, a prominent firm of jewelers in the city of Richmond, for about twelve years. In addition to his duties as salesman, Ewell was buyer for the firm, graded and valued the precious stones, and priced and marked the goods placed on sale. It is thus seen he occupied a position of considerable responsibility and authority. The immediate cause of the severance of the relation existing between the parties grew out of a controversy in regard to the collection of a bill for goods for which Ewell, a few weeks previously, had personally obtained the order, and sold to the Virginia Boat Club, an admittedly responsible organization. Only three persons were present at the time of the occurrence—namely, Mr. Buchanan, Mr. Ewell, and Miss Andrews, an office employee, all of whom testified. It was agreed by all three witnesses, including Mr. Buchanan himself, that after a passage of words between them, Mr. Buchanan ordered Ewell to take his hat and get out of the store, whereupon Ewell asked Mr. Buchanan what he should do with the diamonds he was then engaged in weighing—put them in the safe or give them to Mr. Sloan, another employee—and was told to leave them "right where they are." Ewell then got his hat and walked out. It is insisted by Mr. Buchanan that he did not mean to permanently discharge Ewell, that he ordered him out of the store because he was impertinent, and that he voluntarily left his employment. Both Ewell and Miss Andrews gave a detailed account of the affair to the jury and denied that Ewell was in any way disrespect-

ful to Mr. Buchanan. It also appears that Ewell sought Mr. Buchanan out a few hours afterwards and again the next day for the purpose of having a settlement with him, but he said nothing to Ewell on either of these occasions, nor at any time afterwards, about coming back to work; and that several days later Mr. Buchanan directed one of his employees to get from Ewell the keys to the store door and vault, which he had been carrying and still had in his possession. There is also some evidence tending to show that Mr. Buchanan had become dissatisfied with the amount of Ewell's sales, and that the complaint about the boat club bill was designed as an occasion for discharging him. Whether this be true or not true, in the state of the evidence relating to it, the question of whether Ewell was discharged or voluntarily quit the defendant's employ was one for the determination of the jury, and such being the case, its finding on the subject should not be disturbed. *Goldsmith* v. *Latz*, 96 Va. 680, 32 S. E. 483; *Conrad* v. *Ellison-Harvey Co.*, 120 Va. 458, 91 S. E. 763, Ann. Cas. 1918B, 1171.

[2, 3] It is next contended that, if Ewell was actually discharged, his dismissal was justifiable on account of impertinent conduct towards his employer, and neglect of his duties.

The only instance of what he terms improper conduct on the part of Ewell, as to which Mr. Buchanan made any complaint in his testimony, was the occasion of the rupture between them heretofore referred to; but, as has been previously stated, this was contradicted by Ewell and Miss Andrews, in their account of what took place between the parties. One or two of the other employees also testified that Ewell had several times been rude in his conduct towards Mr. Buchanan, and had spoken disrespectfully of him.

The plaintiff's neglect of duties, as it is argued, consisted of his failure to sometimes check up invoices and price the wares promptly, and of his absence from the store at intervals without the consent of his employer. Aside, however, from Ewell's denial or explanation of these matters, as the case may be, the evidence fails to show that the firm suffered any loss of business on account of these alleged delinquencies, or that its interests were otherwise materially injured by them.

Suffice to say without further discussion of it, that all evidence introduced, both pro and con, in reference to Ewell's conduct to his employer and his alleged neglect of duty, was before the jury; and, in view of the nature of such evidence, the question of whether his discharge was justifiable on either of those grounds was properly left by the court to the decision of the jury. At the least, it can be fairly said that there is no proof that the plaintiff so far breached either the express or implied terms of his employment as to warrant the conclusion that, as a matter of law, the defendant was justified in discharging him. As a general rule the question of justification for the dismissal of a servant by the master is for the jury. It is only where the facts are clear and undisputed that it becomes a question for the court. 39 Corpus Juris, page 105; *Spotswood Arms Corporation* v. *Este*, 147 Va. 1047, 133 S. E. 570.

[4] The next contention is that the court should have set aside the verdict because the contract of employment was for an indefinite term of service and, therefore, terminable at the will of either party. It appears that plaintiff entered defendant's employ October 1, 1913, at a salary based on a flat compensation of $65.00 per month "and ten per cent commis-

sion on over $5,000.00 net sales." With the exception of various increases in the monthly rate of compensation, this contract continued in effect until the end of the year 1921, at which time Ewell was receiving $200.00 per month plus the same commission. In the year 1922, Buchanan stopped paying any of his salesmen commissions by way of compensation, and agreed to pay plaintiff $200.00 per month and, in lieu of commissions, "a bonus of $1,200.00 at the end of the year," the parties thus entering into a new contract for that calender year. Plaintiff worked under this contract in the year 1923, and again in 1924, except that in June of the last mentioned year Mr. Buchanan voluntarily increased his rate of monthly pay to $250.00, thus making his total salary for that year $3,950.00. This agreement—$250.00 per month and the additional sum of $1,200.00 at the end of the year—existed between the parties during the year 1925, until plaintiff's discharge on the 13th of August. None of these facts were in dispute. Plaintiff also introduced in evidence the following writing signed by Mr. Buchanan:

"Richmond, Va., July 24, 1925.

"This is to certify that H. L. Ewell has a drawing account of three thousand dollars per year and an additional twelve hundred dollars at the end of year for his share of the profits.

"D. BUCHANAN AND SON,
"D."

It may also be said that Mr. Buchanan admitted on cross-examination that he made a verbal yearly contract with Ewell, as the latter claimed in his evidence, and it was testified by Mr. Harmon, defendant's bookkeeper, that the above writing correctly stated his understanding of the contract between the parties.

The question presented is, therefore, whether the facts and circumstances above set forth were sufficient to justify the jury's finding, that the contract between the parties was a yearly contract of employment, or whether they should have found that it was for an indefinite term of service, as contended in the argument of defendant's counsel.

In *Conrad* v. *Ellison-Harvey Co.*, 120 Va. 458, 91 S. E. 763, Ann. Cas. 1918B, 1171, Judge Kelly quotes with approval from the opinion of the court in *Tatterson* v. *Suffolk Mfg. Co.*, 106 Mass. 56, as follows:

" 'There was no express stipulation, either written or oral, which fixed the time for the continuance of the employment of the plaintiff by the defendant. That element of their contract depended upon the understanding and intent of the parties, which could be ascertained only by inference from their written and oral negotiations, the usages of the business, the situation of the parties, the nature of the employment, and all the circumstances of the case. It was an inference of fact to be drawn only by the jury. The whole question, what was the contract existing between the parties at the time the defendants undertook to terminate the employment, was properly submitted to the jury.' "

Taking into consideration the whole evidence, in all its elements, we think the jury may have fairly concluded therefrom that, when the parties made a new contract for 1922—whereby they agreed on a definite salary of $3,600.00 for the year, payable at the rate of $200.00 a month, and the balance of $1,200.00 at the end of the year—they agreed on terms for that year only, and not for an indefinite period of time. In other words, the jury might have properly found from the evidence before it that the parties did not agree on

a salary of $3,600.00 *a year*, for·an indefinite period, but on a salary of $3,600.00 for *the year 1922;* and thereby impliedly fixed a definite time for the termination of the contract.   That this was the intent and understanding. of the parties is further borne out by evidence which tends to show that the verbal agreement between the parties in relation to plaintiff's employment in 1922, was expressly renewed at the beginning of each calender year thereafter without variation in terms, except as to the increase of salary above referred to.   The fact that this was done may clearly be inferred not only from the evidence given by the plaintiff, but also from the evidence of Mr. Buchanan, that he made a yearly contract with Ewell, and from the testimony of Mr. Harmon.   In addition, the writing of July 24, 1925, prepared and signed by Mr. Buchanan himself, stating that Ewell then had "a drawing account of three thousand dollars per year, and an additional twelve hundred *at the end of the year*," indicates that a yearly contract existed between them at that time. If, however, the verbal agreement applying to the year 1922 was for the definite term of one year, as the jury had the right to find, it is immaterial whether said agreement was expressly renewed for each year thereafter or not.   The law on the subject in Virginia was settled by the case of *Conrad* v. *Ellison-Harvey Co., supra*, where it was said: ·

[5] "Both in England and in. this country, however, when one enters the employment of another for a definite period (of one year or less) and continues in that employment after the expiration of that period without any new agreement, the presumption, rebuttable, of course, by evidence, is that he is again employed for a like period."   See also 18 R. C. L., section 6, page 496, and section 47, page 533.

That case also holds that a mere increase in salary, though unexplained, "would not in itself be sufficient to show any intent to convert into a monthly employment one which had commenced under a yearly contract."

[6] It should be borne in mind, however, that the writing of July 24, 1925, was not intended to constitute an original contract, but was given Ewell at his request merely as a memorandum of the contract previously made and at the time existing between them, and, in the view we take of the case, even if the jury should not have found that the contract of 1922 was for a definite period, and, therefore, neither expressly nor impliedly renewable for such a period, we think the paper itself, taken in connection with the parol evidence, furnished sufficient ground for the conclusion by the jury that the existing contract between the parties was for a term of one year terminating at the end of the year 1925. As heretofore said, under the facts and circumstances of this case, the whole question was for the jury.

[7, 8] It is next argued that the memorandum of July 24, 1925, was one of partnership, and not a contract of employment. There is no merit in this assignment. Even where the contract showed that the employee was to receive a part of the profits as shown by the books at the end of the fiscal year as compensation for his services, it was held that he was not a partner in the business. *Goldsmith* v. *Latz*, 96 Va. 680, 32 S. E. 483. *A fortiori* he cannot be considered a partner when he is to receive, in part compensation, a definite sum at the end of the year as his share of the profits. The memorandum must be read in the light of the other evidence in the case.

[9] After all the evidence on both sides had been

introduced at the trial, the defendant below moved to exclude all parol evidence in relation to the contract between the parties on the ground, as we understand it, (1) that such a parol contract was within the statute of frauds and (2) upon the further ground that the action was brought on the writing of July 24, 1925, and same failing to fulfill the requirements of the statute of frauds, parol evidence was not admissible to take it out of the statute.   The action of the court in overruling this motion constitutes another assignment of error.

We think the conclusions hereinbefore announced practically dispose of the contention that the parol contract of employment comes within the inhibition of the statute of frauds, but we should perhaps go further and give our reasons for this assertion.   As stated, the jury would have been justified in finding that the parol agreement of 1922 was either expressly or impliedly renewed at the beginning of each succeeding calender year of plaintiff's service up to and including the year 1925, and that plaintiff's term of employment at the time of his discharge was, therefore, for the definite period of one year, under a yearly contract made at the beginning of the year 1925.   Such being the case, the contract existing between the parties at the time of his discharge does not come within the statute proscribing a verbal contract which is not to be performed within a year.

In *Conrad* v. *Ellison-Harvey Co.*, *supra*, the plaintiff entered the employment on January 1, 1910, under a written contract which fixed his term of service for one year.   He remained in the employ of the company without any new agreement as to the term of service until he was discharged on June 30, 1914, and brought suit to recover damages for such discharge on an im-

plied contract beginning on January 1, 1914. It was claimed that the oral evidence tending to prove a contract covering the year 1914 should be excluded on the ground that such a contract was within the statute of frauds. The court said:

"The evidence, both oral and written, of the previous contract and relationship between the parties was introduced for the purpose of throwing light upon the intentions of the parties during the subsequent year of 1914, and as such has already shown to have been proper, even though in that way it did tend to prove a contract which came into existence during a subsequent year. It was a contract based upon implication and presumption drawn in part from the previous dealings between the parties, but it was nevertheless a new contract, not made until the year 1914 began, and to be performed within that year. In other words, it was the ordinary case of a contract for one year's service, to be performed within the year, and consequently not within the statute of frauds or parol agreements." We consider the above language pertinent to the case here. See also *Tatterson* v. *Suffolk Mfg. Co.*, 106 Mass. 56, and cases cited in note, 15 L. R. A. (N. S.) page 321.

[10] The second ground of the motion now under consideration seems to be based upon a misconception of plaintiff's case as disclosed by the record. The notice of motion sets up the contract relied on in this language:

"That for some years previous to August 13, 1925, *and for the year 1925*, the undersigned was employed by you at an annual salary of forty-two hundred dollars ($4,200.00), payable at the rate of two hundred fifty dollars ($250.00) each month until the end of the year and twelve hundred dollars ($1,200.00) on or before January 1st of each and every year, which contract is evidenced in writing, signed by you." (Italics supplied.)

It thus appears that plaintiff claimed under a contract made both prior to the year 1925, and also for the year 1925, and not upon the writing of July 24, 1925, itself. The writing was executed subsequently to the contract upon which plaintiff bases his claim, and, as clearly shown by the evidence, and previously stated, was not intended to constitute an original contract of employment but as a memorandum of the verbal agreement then existing, and it was properly admissible to be considered by the jury along with other evidence introduced for the purpose of proving the contract. It is unnecessary, therefore, to discuss the contention that the writing itself does not meet with the requirements of the statute of frauds, and that parol evidence was not admissible to take it out of the statute.

The remaining assignments of error relate to the instructions. Five instructions were given at the request of the plaintiff, to all of which exceptions were taken. We do not consider that it would serve any useful purpose to further prolong this opinion by discussing in detail the objections offered to these instructions. We have, however, carefully considered both the instructions and the objections interposed, and when read in connection with the other instructions given find no substantial error in any of them.

For the defendant below ten instructions were offered, of which four were given as offered; one was given as amended, and five were refused; and to the action of the court in amending instruction No. 6, aforesaid, and in refusing instructions I, II, III, IV, and V, exceptions were duly taken.

[11] The amendment to instruction 6 consisted of the striking out by the court of the last paragraph,

which told the jury that if they believed that plaintiff was employed by the defendant at a salary of $4,-200.00 for the year beginning January 1, 1925, and such a contract was made before January 1, 1925, "then the jury cannot find a verdict for the plaintiff unless the contract or some memorandum or note thereof was in writing signed by the defendant or his agent and the court tells the jury that the writing dated July 24, 1925, is not a sufficient memorandum of such contract."

We are of opinion that the above paragraph was properly stricken out by the court for the reason that it is misleading and in conflict with the views hereinbefore expressed, in that it involves the question of the statute of frauds which we do not consider is applicable to the oral contract relied on in this case.

[12] Instructions I, II, III, and IV were properly refused, partly for the reason that the propositions therein set forth were covered by the instructions given in defendant's behalf, and also for the reason that said instructions undertook to take from the jury the questions of whether plaintiff was actually discharged, and whether the discharge was justifiable.

[13-15] This brings us to the last assignment of error and rejected instruction V, which reads as follows:

"The court instructs the jury that in this case the plaintiff cannot recover the $1,200.00 or any part thereof claimed as additional compensation for his services."

It is argued in support of this instruction that, as this suit was instituted on November 24, 1925, and said sum of $1,200.00 was not payable until the completion of plaintiff's term of service at the end of the year, he was not entitled to recover said sum or any part thereof in this suit. The prevailing rule on the

subject is found in 18 R. C. L. section 35, page 524, where it is stated to be as follows:

"Time of commencing suit as affecting recovery.—No doubt the wrongfully discharged employee may immediately bring his action against the employer, without waiting until the expiration of the time specified in the contract of service, whether he claims to recover for the value of the services rendered, or whether he demands damages for a breach of the contract. According to what appears to be the prevailing view the measure of damages is the same in either case—in other words, full damages may be recovered if the action is instituted without waiting until the expiration of the term—but there are decisions suggesting a different rule, and the constructive service doctrine permits successive actions in case the contract specifies that wages or salary shall be paid in installments. Where the action is commenced during the term contracted for, but the trial occurs after the expiration of the term, the employee is entitled to recover the same damages that he would have been entitled to recover had the action been commenced after the expiration of the term."

Since it appears that the purpose of this action was to recover damages for breach of the contract of employment, and that the trial of the case did not take place until the 18th of February, 1926, after the term of service had expired, the above instruction was rightly refused.

Upon the whole case we find no prejudicial error in the record, and being of the opinion that the judgment of the trial court was right, the same is hereby affirmed.

*Affirmed.*